## HARRIS *v.* FORKLIFT SYSTEMS, INC.

No. 92–1168.   Argued October 13, 1993—Decided November 9, 1993

O'CONNOR, J., delivered the opinion for a unanimous Court. SCALIA, J., *post*, p. 24, and GINSBURG, J., *post*, p. 25, filed concurring opinions.

*Irwin Venick* argued the cause for petitioner. With him on the briefs were *Robert Belton* and *Rebecca L. Brown.*

*Jeffrey P. Minear* argued the cause for the United States et al. as *amici curiae* in support of petitioner. With him on the brief were *Acting Solicitor General Bryson, Acting Assistant Attorney General Turner, Dennis J. Dimsey, Thomas E. Chandler, Donald R. Livingston, Gwendolyn Young Reams,* and *Carolyn L. Wheeler.*

*Stanley M. Chernau* argued the cause for respondent. With him on the brief were *Paul F. Mickey, Jr., Michael A. Carvin,* and *W. Eric Pilsk.**

JUSTICE O'CONNOR delivered the opinion of the Court.

In this case we consider the definition of a discriminatorily "abusive work environment" (also known as a "hostile work

---

*Briefs of *amici curiae* urging reversal were filed for the American Civil Liberties Union et al. by *Steven R. Shapiro, John A. Powell,* and *Lois C. Waldman;* for Feminists for Free Expression by *Cathy E. Crosson;* for the NAACP Legal Defense and Educational Fund, Inc., et al. by *Elaine R. Jones* and *Eric Schnapper;* for the National Conference of Women's Bar Associations et al. by *Edith Barnett;* for the National Employment Lawyers Association by *Margaret A. Harris, Katherine L. Butler,* and *William J. Smith;* for the NOW Legal Defense and Education Fund et al. by *Deborah A. Ellis, Sarah E. Burns, Richard F. Ziegler,* and *Shari Siegel;* for the Southern States Police Benevolent Association et al. by *J. Michael McGuinness;* and for the Women's Legal Defense Fund et al. by *Carolyn F. Corwin, Judith L. Lichtman, Donna R. Lenhoff,* and *Susan Deller Ross.*

*Robert E. Williams, Douglas S. McDowell,* and *Ann Elizabeth Reesman* filed a brief for the Equal Employment Advisory Council as *amicus curiae* urging affirmance.

Briefs of *amici curiae* were filed for the American Psychological Association by *Dort S. Bigg;* and for the Employment Law Center et al. by *Patricia A. Shiu.*

environment") under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. § 2000e *et seq.* (1988 ed., Supp. III).

I

Teresa Harris worked as a manager at Forklift Systems, Inc., an equipment rental company, from April 1985 until October 1987. Charles Hardy was Forklift's president.

The Magistrate found that, throughout Harris' time at Forklift, Hardy often insulted her because of her gender and often made her the target of unwanted sexual innuendos. Hardy told Harris on several occasions, in the presence of other employees, "You're a woman, what do you know" and "We need a man as the rental manager"; at least once, he told her she was "a dumb ass woman." App. to Pet. for Cert. A–13. Again in front of others, he suggested that the two of them "go to the Holiday Inn to negotiate [Harris'] raise." *Id.*, at A–14. Hardy occasionally asked Harris and other female employees to get coins from his front pants pocket. *Ibid.* He threw objects on the ground in front of Harris and other women, and asked them to pick the objects up. *Id.*, at A–14 to A–15. He made sexual innuendos about Harris' and other women's clothing. *Id.*, at A–15.

In mid-August 1987, Harris complained to Hardy about his conduct. Hardy said he was surprised that Harris was offended, claimed he was only joking, and apologized. *Id.*, at A–16. He also promised he would stop, and based on this assurance Harris stayed on the job. *Ibid.* But in early September, Hardy began anew: While Harris was arranging a deal with one of Forklift's customers, he asked her, again in front of other employees, "What did you do, promise the guy . . . some [sex] Saturday night?" *Id.*, at A–17. On October 1, Harris collected her paycheck and quit.

Harris then sued Forklift, claiming that Hardy's conduct had created an abusive work environment for her because of her gender. The United States District Court for the Middle District of Tennessee, adopting the report and recom-

mendation of the Magistrate, found this to be "a close case," *id.*, at A–31, but held that Hardy's conduct did not create an abusive environment. The court found that some of Hardy's comments "offended [Harris], and would offend the reasonable woman," *id.*, at A–33, but that they were not

> "so severe as to be expected to seriously affect [Harris'] psychological well-being. A reasonable woman manager under like circumstances would have been offended by Hardy, but his conduct would not have risen to the level of interfering with that person's work performance.
> "Neither do I believe that [Harris] was subjectively so offended that she suffered injury . . . . Although Hardy may at times have genuinely offended [Harris], I do not believe that he created a working environment so poisoned as to be intimidating or abusive to [Harris]." *Id.*, at A–34 to A–35.

In focusing on the employee's psychological well-being, the District Court was following Circuit precedent. See *Rabidue* v. *Osceola Refining Co.*, 805 F. 2d 611, 620 (CA6 1986), cert. denied, 481 U. S. 1041 (1987). The United States Court of Appeals for the Sixth Circuit affirmed in a brief unpublished decision. Judgt. order reported at 976 F. 2d 733 (1992).

We granted certiorari, 507 U. S. 959 (1993), to resolve a conflict among the Circuits on whether conduct, to be actionable as "abusive work environment" harassment (no *quid pro quo* harassment issue is present here), must "seriously affect [an employee's] psychological well-being" or lead the plaintiff to "suffe[r] injury." Compare *Rabidue* (requiring serious effect on psychological well-being); *Vance* v. *Southern Bell Telephone & Telegraph Co.*, 863 F. 2d 1503, 1510 (CA11 1989) (same); and *Downes* v. *FAA*, 775 F. 2d 288, 292 (CA Fed. 1985) (same), with *Ellison* v. *Brady*, 924 F. 2d 872, 877–878 (CA9 1991) (rejecting such a requirement).

## II

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U. S. C. § 2000e–2(a)(1). As we made clear in *Meritor Savings Bank, FSB* v. *Vinson*, 477 U. S. 57 (1986), this language "is not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment," which includes requiring people to work in a discriminatorily hostile or abusive environment. *Id.*, at 64, quoting *Los Angeles Dept. of Water and Power* v. *Manhart*, 435 U. S. 702, 707, n. 13 (1978) (some internal quotation marks omitted). When the workplace is permeated with "discriminatory intimidation, ridicule, and insult," 477 U. S., at 65, that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," *id.*, at 67 (internal brackets and quotation marks omitted), Title VII is violated.

This standard, which we reaffirm today, takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury. As we pointed out in *Meritor*, "mere utterance of an . . . epithet which engenders offensive feelings in a employee," *ibid.* (internal quotation marks omitted) does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the

conditions of the victim's employment, and there is no Title VII violation.

But Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers. Moreover, even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality. The appalling conduct alleged in *Meritor,* and the reference in that case to environments "'so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers,'" *id.,* at 66, quoting *Rogers* v. *EEOC,* 454 F. 2d 234, 238 (CA5 1971), cert. denied, 406 U. S. 957 (1972), merely present some especially egregious examples of harassment. They do not mark the boundary of what is actionable.

We therefore believe the District Court erred in relying on whether the conduct "seriously affect[ed] plaintiff's psychological well-being" or led her to "suffe[r] injury." Such an inquiry may needlessly focus the factfinder's attention on concrete psychological harm, an element Title VII does not require. Certainly Title VII bars conduct that would seriously affect a reasonable person's psychological well-being, but the statute is not limited to such conduct. So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, *Meritor, supra,* at 67, there is no need for it also to be psychologically injurious.

This is not, and by its nature cannot be, a mathematically precise test. We need not answer today all the potential

questions it raises, nor specifically address the Equal Employment Opportunity Commission's new regulations on this subject, see 58 Fed. Reg. 51266 (1993) (proposed 29 CFR §§ 1609.1, 1609.2); see also 29 CFR § 1604.11 (1993). But we can say that whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

## III

Forklift, while conceding that a requirement that the conduct seriously affect psychological well-being is unfounded, argues that the District Court nonetheless correctly applied the *Meritor* standard. We disagree. Though the District Court did conclude that the work environment was not "intimidating or abusive to [Harris]," App. to Pet. for Cert. A–35, it did so only after finding that the conduct was not "so severe as to be expected to seriously affect plaintiff's psychological well-being," *id.*, at A–34, and that Harris was not "subjectively so offended that she suffered injury," *ibid.* The District Court's application of these incorrect standards may well have influenced its ultimate conclusion, especially given that the court found this to be a "close case," *id.*, at A–31.

We therefore reverse the judgment of the Court of Appeals, and remand the case for further proceedings consistent with this opinion.

*So ordered.*

JUSTICE SCALIA, concurring.

*Meritor Savings Bank, FSB* v. *Vinson,* 477 U. S. 57 (1986), held that Title VII prohibits sexual harassment that takes the form of a hostile work environment. The Court stated that sexual harassment is actionable if it is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Id.,* at 67 (quoting *Henson* v. *Dundee,* 682 F. 2d 897, 904 (CA11 1982)). Today's opinion elaborates that the challenged conduct must be severe or pervasive enough "to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *Ante,* at 21.

"Abusive" (or "hostile," which in this context I take to mean the same thing) does not seem to me a very clear standard—and I do not think clarity is at all increased by adding the adverb "objectively" or by appealing to a "reasonable person['s]" notion of what the vague word means. Today's opinion does list a number of factors that contribute to abusiveness, see *ante,* at 23, but since it neither says how much of each is necessary (an impossible task) nor identifies any single factor as determinative, it thereby adds little certitude. As a practical matter, today's holding lets virtually unguided juries decide whether sex-related conduct engaged in (or permitted by) an employer is egregious enough to warrant an award of damages. One might say that what constitutes "negligence" (a traditional jury question) is not much more clear and certain than what constitutes "abusiveness." Perhaps so. But the class of plaintiffs seeking to recover for negligence is limited to those who have suffered harm, whereas under this statute "abusiveness" is to be the test of whether legal harm has been suffered, opening more expansive vistas of litigation.

Be that as it may, I know of no alternative to the course the Court today has taken. One of the factors mentioned in the Court's nonexhaustive list—whether the conduct unrea-

sonably interferes with an employee's work performance—would, if it were made an absolute test, provide greater guidance to juries and employers. But I see no basis for such a limitation in the language of the statute. Accepting *Meritor's* interpretation of the term "conditions of employment" as the law, the test is not whether work has been impaired, but whether working conditions have been discriminatorily altered. I know of no test more faithful to the inherently vague statutory language than the one the Court today adopts. For these reasons, I join the opinion of the Court.

JUSTICE GINSBURG, concurring.

Today the Court reaffirms the holding of *Meritor Savings Bank, FSB* v. *Vinson,* 477 U. S. 57, 66 (1986): "[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed. See 42 U. S. C. § 2000e–2(a)(1) (declaring that it is unlawful to discriminate with respect to, *inter alia,* "terms" or "conditions" of employment). As the Equal Employment Opportunity Commission emphasized, see Brief for United States and Equal Employment Opportunity Commission as *Amici Curiae* 9–14, the adjudicator's inquiry should center, dominantly, on whether the discriminatory conduct has unreasonably interfered with the plaintiff's work performance. To show such interference, "the plaintiff need not prove that his or her tangible productivity has declined as a result of the harassment." *Davis* v. *Monsanto Chemical Co.,* 858 F. 2d 345, 349 (CA6 1988). It suffices to prove that a reasonable person subjected to the discriminatory conduct would find, as the plaintiff did, that the harassment so altered working conditions as to "ma[k]e it more difficult to do the job." See *ibid. Davis* concerned race-based discrimination, but that differ-

ence does not alter the analysis; except in the rare case in which a bona fide occupational qualification is shown, see *Automobile Workers* v. *Johnson Controls, Inc.,* 499 U. S. 187, 200–207 (1991) (construing 42 U. S. C. §2000e–2(e)(1)), Title VII declares discriminatory practices based on race, gender, religion, or national origin equally unlawful.*

The Court's opinion, which I join, seems to me in harmony with the view expressed in this concurring statement.

---

*Indeed, even under the Court's equal protection jurisprudence, which requires "an exceedingly persuasive justification" for a gender-based classification, *Kirchberg* v. *Feenstra,* 450 U. S. 455, 461 (1981) (internal quotation marks omitted), it remains an open question whether "classifications based upon gender are inherently suspect." See *Mississippi Univ. for Women* v. *Hogan,* 458 U. S. 718, 724, and n. 9 (1982).