52 F.3d 90
 UNITED STATES of America, Plaintiff-Appellant,
v.
COMMONWEALTH OF VIRGINIA; George F. Allen, Governor, of the
Commonwealth of Virginia; Virginia Military Institute;
Joseph M. Spivey, III, President of the Virginia Military
Institute Board of Visitors; John Williams Knapp,
Superintendent of Virginia Military Institute; The Board of
Visitors of Virginia Military Institute; VMI Foundation,
Incorporated; VMI Alumni Association; The Virginia State
Council of Higher Education and its Members and Officers;
Thomas N. Downing; Elizabeth P. Hoisington, Brig. Gen.;
Robert Q. Marston; A. Courtland Spotts, III; Daniel F.
Flowers; B. Powell Harrison, Jr.; Robert H. Spilman;
Samuel E. Woolwine; James W. Enochs, Jr.; William A.
Hazel; Harvey S. Sadow; Douglas K. Baumgartner; Daniel D.
Cameron; Glen N. Jones; John W. Roberts, Defendants-Appellees,
and
Gordon K. Davies, Defendant.
The National Women's Law Center; American Association of
University Women; American Civil Liberties Union;
California Women's Law Center; Center for Women Policy
Studies; Connecticut Women's Education and Legal Fund;
Equal Rights Advocates; Federally Employed Women, Inc.;
Feminist Majority Foundation; Human Rights Campaign Fund;
Lawyer's Committee for Civil Rights Under Law; National
Association for Girls & Women in Sport; National
Association of Commissions for Women; National Council of
Negro Women; National Education Association; National Gay
and Lesbian Task Force; National Hookup of Black Women;
National Organization for Women; Now Legal Defense and
Education Fund; National Women's Conference Committee;
National Women's Party; Northwest Women's Law Center;
Trial Lawyers for Public Justice; Women Employed; Women's
Law Project; Women's Legal Defense Fund; YWCA of the
U.S.A.; Mary Baldwin College; Wells College; Saint Mary's
College; Southern Virginia College, Amici Curiae.
UNITED STATES of America, Plaintiff-Appellee,
v.
COMMONWEALTH OF VIRGINIA; George F. Allen, Governor, of the
Commonwealth of Virginia; Virginia Military Institute;
Joseph M. Spivey, III, President of the Virginia Military
Institute Board of Visitors; John Williams Knapp,
Superintendent of Virginia Military Institute; The Board of
Visitors of Virginia Military Institute; VMI Foundation,
Incorporated; VMI Alumni Association; The Virginia State
Council of Higher Education and its Members and Officers;
Thomas N. Downing; Elizabeth P. Hoisington, Brig. Gen.;
Robert Q. Marston; A. Courtland Spotts, III; Daniel F.
Flowers; B. Powell Harrison, Jr.; Robert H. Spilman;
Samuel E. Woolwine; James W. Enochs, Jr.; William A.
Hazel; Harvey S. Sadow; Douglas K. Baumgartner; Daniel D.
Cameron; Glen N. Jones; John W. Roberts, Defendants-Appellants,
and
Gordon K. Davies, Defendant.
The National Women's Law Center; American Association of
University Women; American Civil Liberties Union;
California Women's Law Center; Center for Women Policy
Studies; Connecticut Women's Education and Legal Fund;
Equal Rights Advocates; Federally Employed Women, Inc.;
Feminist Majority Foundation; Human Rights Campaign Fund;
Lawyer's Committee for Civil Rights Under Law; National
Association for Girls & Women in Sport; National
Association of Commissions for Women; National Council of
Negro Women; National Education Association; National Gay
and Lesbian Task Force; National Hookup of Black Women;
National Organization for Women; Now Legal Defense and
Education Fund; National Women's Conference Committee;
National Women's Party; Northwest Women's Law Center;
Trial Lawyers for Public Justice; Women Employed; Women's
Law Project; Women's Legal Defense Fund; YWCA of the
U.S.A.; Mary Baldwin College; Wells College; Saint Mary's
College; Southern Virginia College, Amici Curiae.
 Nos. 94-1667, 94-1712.
 United States Court of Appeals,
Fourth Circuit.
 April 28, 1995.
 
 CORRECTED ORDER
 A member of the Court requested a poll on whether to rehear this case en banc. The poll failed to produce a majority of the court in favor of rehearing. Chief Judge Ervin and Judges Hall, Murnaghan, Wilkins, Michael and Motz voted to rehear this case en banc; Judges Russell, Widener, Niemeyer and Hamilton voted against rehearing this case en banc. Judges Wilkinson, Luttig, and Williams disqualified themselves. Judge Motz wrote a separate dissent, in which Judge Hall, Judge Murnaghan, and Judge Michael joined.
 Entered at the direction of Judge Niemeyer for the Court.
 MOTZ, Circuit Judge, dissenting from denial of rehearing en banc:
 More than forty years ago the Supreme Court unanimously held that a state could not constitutionally provide a "separate but equal" education to African-Americans. Yet in a 2-1 decision, a panel of this court has now held that a state can constitutionally provide a separate--and concededly not even equal--education to women. In my view, this holding is one of exceptional importance, which merits the careful consideration of every eligible member of the court.[1] Accordingly, I respectfully dissent from the denial of rehearing en banc.
 Judge Phillips' thoughtful dissenting opinion on the merits of this case and Judge Hall's memorable concurring opinion in Faulkner v. Jones, 51 F.3d 440, 450-51 (4th Cir.1995) (Hall, J. concurring) set forth many of the reasons why I believe rehearing is warranted here. To them, I add the following thoughts.
 
 
 1
 The panel majority asserts that the Commonwealth must meet a three prong test: (1) the state's objective must be " 'legitimate and important,' " (2) there must be the " 'requisite direct, substantial relationship between objective and means,' " and (3) there must be "substantive comparability of the mutually exclusive programs provided to men and women." United States v. Commonwealth of Virginia, 44 F.3d 1229, 1235, 1237 (4th Cir.1995) (VMI II ) (quoting Mississippi Univ. for Women v. Hogan, 458 U.S. 718, 724, 102 S.Ct. 3331, 3336, 73 L.Ed.2d 1090 (1982)). Assuming this is the correct constitutional standard,[2] the panel majority's application of that standard to the facts of this case is confused and contrary to both law and logic.
 
 
 2
 First, the panel majority appears to identify as the Commonwealth's "legitimate and important" objective the provision of "single-gender education." See VMI II, 44 F.3d at 1237 (the first step is "whether the state's objective of providing single-gender education to its citizens may be considered a legitimate and important governmental objective"; the first inquiry is "whether single-gender education constitutes a legitimate and important governmental objective"). However, in Hogan the Supreme Court expressly held that the single-gender admissions policy of a state-supported nursing school violated the Equal Protection Clause. 458 U.S. at 731, 102 S.Ct. at 3339-40. The Hogan Court may, as the panel majority suggests, have left open the question of whether states could provide single-gender education "in other circumstances," but it clearly did not leave open the question of whether a state-supported single-gender educational program can be constitutionally justified simply because it is a single-gender program. The panel majority itself acknowledges that a "state may not establish a [gender-based] classification for admission ... unrelated to" the purpose of the sort of education that is being provided. VMI II, 44 F.3d at 1238 (emphasis in original). Indeed, it is for this reason that the majority notes that "a classification for ... [a music] conservatory defined by gender would probably not qualify as an appropriate classification." Id. Thus, simply providing single-gender education cannot constitute a state's legitimate and important objective for excluding one gender from a state-financed institution.[3]
 
 
 3
 Rather, there must be some reason why a single-gender state-supported institution is necessary to further an important governmental objective. Indeed, those seeking to justify a single-gender admission policy must "carry the burden of showing an 'exceedingly persuasive justification' " for it. Hogan, 458 U.S. at 724, 102 S.Ct. at 3336. There has been no such showing here. VMI's stated mission is to produce "citizen-soldiers, educated and honorable ... who are suited for leadership in civilian life and who can provide military leadership when necessary." United States v. Commonwealth of Virginia, 976 F.2d 890, 893 (4th Cir.1992) (VMI I ). Nothing suggests, let alone provides an "exceedingly persuasive justification," that VMI's male-only admissions policy and "sexually homogenous environment" are necessary to further this mission; indeed, the co-educational United States military academies graduate far more "citizen-soldiers, educated and honorable ... who are suited for leadership in civilian life and who can provide military leadership when necessary."
 
 
 4
 Furthermore, despite the panel majority's abundant rhetoric about "adversative" training, it never demonstrates the "requisite direct, substantial relationship" between VMI's asserted objective--producing "citizen soldiers, educated and honorable"--and the means employed to accomplish that objective. Again, the established experience at the United States military academies strongly suggests there is none. The military academies are apparently able to train soldiers, sailors, and pilots without the benefit of "adversative" training. It might even be argued that, since the military academies have abandoned "adversative" training, the provision of that training to VMI cadets, rather than preparing them to be leaders in today's Armed Forces, affirmatively disadvantages them for military leadership roles.
 
 
 5
 Assuming, however, that "adversative" training is both desirable and essential to the VMI program, then the proposed Mary Baldwin program, which does not include "adversative" training, cannot be "substantively comparable" to the VMI program. If "adversative" training is so critical to the VMI program that it virtually defines it, then a program without "adversative" training can never be "substantively comparable." Conversely, if the proposed program at Mary Baldwin is truly "substantively comparable" to the VMI program, then "adversative" training must not be critical to the VMI program, and so there is nothing to prevent the abolition of "adversative" training and admission of women to VMI.
 
 
 6
 Even leaving aside "adversative" training, how can a degree from a yet to be implemented supplemental program at Mary Baldwin be held "substantively comparable" to a degree from a venerable Virginia military institution that was established more than 150 years ago? As the majority acknowledges, in almost epic understatement, the alternative degree from Mary Baldwin "lacks the historical benefit and prestige of a degree from VMI." VMI II, 44 F.3d at 1241. People do not seek to attend VMI only for the course work or the citizenship and military training. At least as important is VMI's reputation, the opportunity to know and learn from other students, faculty, and graduates, and the ability to rely on those connections and friendships in later life. The proposed alternative program offers no remotely similar, let alone "substantively comparable," experience. Women need not be guaranteed equal "results" in this respect, but the Equal Protection Clause does require equal opportunity to obtain these results; that opportunity is being denied here.
 
 
 7
 The above constitutes a brief sketch of my problems with the panel majority's analysis. In addition, it is worth noting that the degree of judicial oversight required to implement the projected alternative program at Mary Baldwin makes clear how much remains to be accomplished before the proposed program--feeble as it is--can be converted into reality. In the meantime, VMI would continue its unconstitutional course of action. The district court, even with the supervisory assistance of this court, is simply not equipped to plan, inaugurate, and supervise a wholly novel military-leadership program within the ambience of a respected women's liberal arts college.
 
 
 8
 The panel majority notes that admission of women to VMI "would deny them the very benefit they sought" because the unique characteristics of VMI's program would be destroyed by coeducation. VMI II, 44 F.3d at 1233. No changes in VMI's curriculum and culture would be required, however, and its uniqueness would be fully preserved, if the Commonwealth simply ceased providing the substantial financial support it gives to VMI[4] and proposes to give to the alternative program in order to preserve VMI. Conformity with constitutional requirements would thus be immediately achieved without any judicial involvement and at a substantial saving of taxpayers' money.
 
 
 9
 Finally, it well may be, as a few members of the task force apparently suggested, that many women do not wish to attend VMI where the intended purpose is "to break down individualism and to instill uniform values" by "grating egos and setting the aggressiveness of one person against another through conflict, egalitarianism, lack of privacy, and stress--both physical and mental." Id. at 1239. It seems equally probable that many men would not want to be educated in such an environment. No one is arguing that women--or men--should be forced to attend VMI. The question is can they constitutionally be denied that opportunity when the Commonwealth--with tax dollars from men and women--supports the institution. Recently the United States eliminated its rule excluding women from combat duty, explaining that the rule was an "armour-plated ceiling" preventing the advancement of women in the military. Several months ago, one of the first women fighter pilots was killed during a practice run. Anyone who is prepared to do combat for her country--indeed, to be killed in preparation for that combat--should be eligible to apply for what she perceives to be the best possible training. As long as the Commonwealth provides support for VMI, women should be given the opportunity to attend.
 
 
 10
 Judge HALL, Judge MURNAGHAN and Judge MICHAEL have authorized me to indicate that they join in this dissent.
 
 
 
 [1]
 A majority of my non-recused colleagues in active service agree with this assessment and have voted to hear the case en banc. Our local rule, which permits rehearing en banc only on the vote of a "majority of the circuit judges who are in regular active service.... without regard to whether a judge is disqualified," in this case allows the votes of four, voting against rehearing en banc, to defeat the votes of six, voting for rehearing en banc. See Local Rule 35(b)
 
 
 [2]
 It well may be that classifications based on gender, like those based on race or national origin, must be subjected to strict scrutiny. The Supreme Court has never so held, but only a few months ago the Court reminded us that whether classifications based on gender are inherently suspect and so subject to strict scrutiny is an "open question." J.E.B. v. Alabama ex rel. T.B., 510 U.S. ----, ---- n. 6, 114 S.Ct. 1419, 1425 n. 6, 128 L.Ed.2d 89 (1994) (quoting Harris v. Forklift Systems, 510 U.S. ----, ----, 114 S.Ct. 367, 373, 126 L.Ed.2d 295 (1993) (Ginsburg, J. concurring)). See also, Hogan, 458 U.S. at 724 n. 9, 102 S.Ct. at 3336 n. 9. Not even the panel majority suggests that the Commonwealth's proposal--to continue funding VMI, yet prohibit women from attending simply because they are women, and instead provide them with a leadership program 35 miles away--could be justified by a compelling state interest or withstand strict scrutiny. It is clear that it could not
 
 
 [3]
 The panel majority views single-gender education as a bona-fide educational "technique," which it well may be in certain circumstances. However, in this case it is, at best, a stratagem to achieve the Commonwealth's real objective--preservation of VMI, with its "adversative" training and culture, from the unwelcome intrusion of women. See Faulkner v. Jones, 51 F.3d at 451 (Hall, J., concurring) ("these cases have very little to do with education. They instead have very much to do with wealth, power, and the ability of those who have it now to determine who will have it later.")
 
 
 [4]
 It is estimated that this support last year exceeded $10 million