314

John C. SIMOUDIS, Plaintiff–
Appellant,

v.

FORD MOTOR COMPANY,
Defendant–Appellee.

No. 00–4226.

United States Court of Appeals,
Sixth Circuit.

Feb. 5, 2002.

Before MERRITT, BOGGS, and MOORE, Circuit Judges.

MERRITT, Circuit Judge.

Plaintiff John Simoudis appeals from the entry of summary judgment in favor of his employer, defendant Ford Motor Company. Plaintiff brought this action against Ford in Ohio state court alleging various violations of Ohio law. Defendant removed the complaint to federal court based on diversity of citizenship. Specifically, plaintiff brought claims of discrimination based on (1) national origin, (2) age, (3) retaliation for filing workers' compensation claims and (4) violations of Ohio public policy based on the discrimination and retaliation. Plaintiff did not raise his age discrimination claim on appeal.

Plaintiff is a Greek–American who has worked at the Ford stamping plant in Walton Hills, Ohio, since 1988, as a metals performance analyst and quality control manager. In July 1995, plaintiff went on medical leave due to heart problems and a back injury he received at the plant. He went on long-term disability in December

1996 and that was his status at the time he filed this action in August 1999.

Plaintiff filed two workers' compensation claims: one in July 1997 and the second in November 1998. In February 1999, during the course of litigating the second workers' compensation claim, plaintiff discovered that his employment status had been changed from "approved medical leave of absence" to "terminated-unapproved." Plaintiff had not been given notice of this change in status and, although his benefits had not changed, he was concerned about the change and contacted Fred Ivey, supervisor of salaried personnel at the plant. After talking with Ivey, plaintiff sent Ivey a letter stating that Ford violated Ohio law and Ford's own personnel policies by taking punitive action against him for filing the workers' compensation claims. Letter from J. Simoudis to F. Ivey, dated Feb. 11, 1999 (J.A. at 63). Ford responded to plaintiff by letter, explaining that upon expiration of an employee's medical leave, an "administrative termination" becomes effective. Letter from F. Ivey to J. Simoudis, dated Feb. 17, 1999 (J.A. at 65). Although not stated in the letter, the deposition of Fred Ivey further explains that the status change was made in September 1998 for internal bookkeeping purposes and is consistent with Ford's personnel policies. Ivey explained that the change does not affect plaintiff's benefits as long as he remains disabled and that the action was not taken as a punitive measure against plaintiff for any reason. Plaintiff confirmed in his deposition that his benefits had not changed except for loss of the use of a leased car. Plaintiff expressed concern, however, that his benefits might change in the future due to this change in status, although he put forth no evidence or other basis to support this concern or to explain why he fears he may lose benefits in the future.

While the retaliation claim seems to be at the crux of plaintiff's complaint, he also brought a discrimination claim based on national origin. Plaintiff claims that he was subjected to a hostile work environment as a result of being told jokes about homosexuals and Greeks and because he was called offensive names referring to his Greek heritage on a continuous basis when he was working at the plant. Plaintiff does not allege any adverse employment action against him as a result of this harassment.

Besides loss of the use of a leased car, to date plaintiff has not claimed any significant change in job benefits resulting from either the change in his employment classification or from the alleged harassment.

*Hostile Work Environment*

As to his claim of discrimination based on his Greek heritage, plaintiff claims that he was subjected to a hostile work environment by his supervisors and managers, not his coworkers. He does not claim any adverse employment action was taken against him due to the harassment. Defendant contends that plaintiff has not demonstrated a sufficiently severe or pervasive hostile work environment to maintain a claim, but, even if he had, the company has an affirmative defense to any liability due to its anti-harassment policy and plaintiff's failure to make the company aware of his complaints through its published open-door policy.

■ The Ohio courts have adopted federal Title VII standards for use in analyzing hostile environment claims brought under Ohio law. *See, e.g., Bell v. Cuyahoga Cty. College,* 129 Ohio App.3d 461, 717 N.E.2d 1189 (1998). The elements and burden of proof are the same regardless of the discrimination context in which the claim arises. *Crawford v. Medina Gen'l Hosp.,* 96 F.3d 830, 834 (6th Cir.1996).

Therefore, in order to prevail on a claim of hostile work environment and harassment based on national origin, plaintiff must show (1) he was a member of a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based on his national origin; (4) the harassment had the purpose or effect of unreasonably interfering with his work performance or creating an intimidating, hostile or offensive work environment and (5) the employer failed to take reasonable care to prevent and correct any harassing behavior. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (sexual harassment); *Williams v. General Motors Corp.*, 187 F.3d 553, 562 (6th Cir.1999) (same).

▪ In 1998, the Supreme Court revisited the standard for Title VII employer liability in the context of two sexual harassment cases and clarified that agency principles apply. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). An employer is liable for acts committed by employees within the scope of their employment, including vicarious liability for hostile work environments created by supervisors. The Court also articulated an affirmative defense limiting this liability when the plaintiff, like the one herein, has not suffered a tangible adverse employment action. Specifically, the Court stated:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence .... The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.... No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

*Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 807–08, 118 S.Ct. 2275.

▪ Because plaintiff claimed no tangible employment action as a result of the alleged harassment, he must establish that he was subject to severe or pervasive harassment for the hostile work environment claim to be actionable. In this case, the district court stated that it would not hold as a matter of law that plaintiff had not demonstrated a hostile work environment based on the disparaging comments and jokes about his heritage.[1] However, even if plaintiff had demonstrated enough evidence to show a hostile work environment existed as a matter of law, he has not shown any tangible adverse employment action related to the harassment, thereby allowing Ford to raise an affirmative defense. The only possible tangible adverse employment action suffered by plaintiff is the change in status from "approved medical leave" to "terminated-unapproved."

---

1. Contrary to plaintiff's statement in his brief at page 7, the district court did not find a hostile work environment existed at the plant. The district court only stated that genuine issues of material fact remained as to *whether* such an environment existed and it would not *as a matter of law* hold it did not for purposes of summary judgment.

Plaintiff does not claim that this change in status was undertaken or instigated by those supervisors harassing him. The change in classification was done by administrative personnel with whom plaintiff has no day-to-day contact and who have no immediate authority over plaintiff. Moreover, plaintiff has neither alleged nor shown any adverse effect from this change in status. Therefore, no tangible adverse employment action has occurred that would prohibit defendant from raising the affirmative defense put forth in *Ellerth* and *Faragher*.

■ We agree with the district court that Ford was not liable because it proved the affirmative defense under *Ellerth* and *Faragher*. Ford took steps to prevent harassment in the work place and to provide avenues for employees to bring complaints to its attention, and plaintiff failed to take advantage of the procedures in place. In rebuttal, plaintiff claims that the procedures to report problems were a "sham," but provides no support for this conclusion. Because we agree that Ford's affirmative defense precludes any liability, we affirm on that basis.

### Retaliation

■ Plaintiff also contends that he was terminated in retaliation for filing a workers' compensation claim in violation of Ohio law. To establish a *prima facie* case of retaliation, plaintiff must show that: (1) he engaged in a protected activity; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action and (4) there was a causal connection between the protected activity and the adverse employment action. *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir.1999).

■ Plaintiff filed his first claim in July 1997 and his second in November 1998. Plaintiff claimed that the retaliation he suffered was "termination"—the change in his employment classification from "approved medical leave of absence" to "terminated-unapproved" in September 1998. This employment action occurred 14 months after his first workers' compensation filing but two months *before* his second filing, so any retaliation in September 1998 must be based on the July 1997 filing. Although plaintiff's complaint only alleges termination as the retaliatory action taken, later in the proceeding, plaintiff added the allegation that Ford also retaliated by taking away with the loss of the "executive automobile privilege"—the loss of a leased company car—in early 1999, presumably in retaliation for filing a claim in November 1998.

We agree with the district court that the lengthy passage of time between the alleged retaliation in September 1998 and the filing of a workers' compensation claim in July 1997 weakens any claim that the change in classification constituted a retaliatory act. Also, plaintiff has not alleged any injury he has suffered as a result of this change in classification, making it difficult to see how the action was retaliatory.

■ As to the second retaliatory act— the loss of the car in early 1999—it was close in time to the filing of the second workers' compensation claim in November 1998. However, we agree with the district court that plaintiff's allegation about the car is vague. The allegation was not raised in the complaint[2] and the record does not contain any information about Ford's policies regarding use of a company

---

2. Plaintiff's second cause of action states that defendant's "unlawful[ ] terminat[ion of] Plaintiff after his filing of a workers' compen- sation claim amounts to retaliation ...." Complaint at ¶¶ 14–15 (J.A. at 12).

car. While plaintiff maintains that he retained the car privilege during his disability, without more information about Ford's policies and procedures concerning this matter it is impossible to find that the loss of the car was retaliatory or punitive and not a legitimate benefit change. Plaintiff stated in his affidavit that in addition to losing the car privilege, he "has been advised" that he will also lose his health benefits on December 1, 2002. Plaintiff does not state the source of this information. While the record does not indicate what Ford's policies are in this regard, to date, Ford has stated that plaintiff is not terminated and his benefits will continue unchanged. Without more than plaintiff's vague allegations about the loss of the use of the car and his concerns about what might happen in the future, we are unable to find sufficient evidence to raise a genuine issue of material fact as to whether Ford has retaliated against him in any way for filing the workers' compensation claims.

### Public Policy

Plaintiff also contends that his termination and Ford's statutory violations concerning the discrimination and retaliation claims violate Ohio's public policy. Ohio Rev.Code §§ 4112 *et seq.* First, as discussed above, we have not found any statutory violations based on the alleged discrimination, so there can be no violation of public policy in that regard. Second, although plaintiff's job classification in Ford's personnel records has been changed to "terminated-unapproved," plaintiff has not been discharged from Ford in the usual sense and he has not demonstrated any injury from this change in the form of disability payments or benefits—other than the loss of the leased car, an action that upon the current record does not raise a genuine issue of material fact as to whether any retaliation occurred.

Accordingly, we do not find any violations of Ohio's public policy.

For the foregoing reasons, the judgment of the district court is affirmed. We make no ruling concerning the legal effect of any change in the future by Ford to plaintiff's employment benefits.