*434 COLE, JR., Circuit Judge, dissenting.
I would reverse the grant of summary judgment on both the retaliation and hostile work environment claims. Viewing the evidence in the light most favorable to the plaintiff and drawing all inferences in his favor, see Eastman Kodak Co. v. Technical Servs., Inc., 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), the district court found that Kelly met many of the elements of a hostile work environment claim. Yet, according to the district court and today’s majority, the conduct to which Kelly was avowedly exposed was not severe or pervasive. I respectfully disagree.
As alleged, the relevant conduct was severe; it was not, by contrast, simple teasing or offhand comment. See Hafford v. Seidner, 183 F.3d 506, 512 (6th Cir. 1999). Several of Kelly’s coworkers repeatedly referred to his clients as “niggers.” A coworker routinely told racist jokes[1] and referred to Kelly’s clients as, inter alia, “monkeys ... [who] want their bananas.” Kelly’s supervisor laughed at racist jokes, referred to Kelly’s clients as “pigs,” and referred to her one superior of color as a “brainless ... token black.” At a Christmas party, this supervisor told Kelly that his clients — poor, elderly people of color — were “loaded with bugs” and, because they “liked to hug,” he should shake out his clothing when he got home. As a result of this and other conduct, Kelly averred that he felt increasing isolated, had difficulty concentrating, and was reluctant to ask questions. When he complained, Kelly was berated, physically shoved, and ultimately terminated.
Nothing about such conduct is offhand. See Jackson v. Quanex, 191 F.3d 647, 662 (6th Cir.1999) (“[A]n abundance of racial epithets and racially offensive graffiti can hardly qualify as offhand or isolated.”). The race-based ridicule and bestialization of the Center’s clients is more than simple teasing. See id. (“Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing ... and conduct which a reasonable person in the plaintiffs position would find severely hostile or abusive.”). Cf. Virginia v. Black, 538 U.S. 343, 388, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (Thomas, J., dissenting) (“In every culture, certain things acquire meaning well beyond what outsiders can comprehend.”).
Although inessential to a hostile work environment claim, see Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (requiring the conduct to be “severe or pervasive”) (emphasis added), the conduct at issue was also pervasive. Kelly served in his position for only four months. Over the course of less than eighty business days— discounting the five national holidays that take place between November 14, 2001 and March 19, 2002 — Kelly reports more than a dozen instances of offensive conduct, culminating in a physical confrontation. According to the lead opinion, the record precludes a finding that Kelly faced offensive conduct on a weekly basis. I believe that the record compels such a finding.
The standard is not whether the conduct Kelly has alleged was as egregious as the conduct at issue in prior opinions of this Circuit.[2] The standard, as articulated by the Supreme Court, is whether the alleged conduct was “sufficiently severe or pervasive to alter the conditions of the victim’s *435 employment and create an abusive work environment.” Id. I have no doubt that a reasonable jury could find that the alleged conduct meets this standard. I would therefore reverse the district court’s grant of summary judgment in favor of the defendant and remand the case for trial on both the retaliation and hostile work environment claims.

. For instance, Kelly’s coworker asked him, "what two syllable word do whites hate to hear associated with blacks?” The answer: "Neighbor.”

. That said, for a meritorious hostile work environment claim on analogous facts, see Moore v. KUKA Welding Systems & Robot Corp., 171 F.3d 1073 (6th Cir.1999).