NIEMEYER, Circuit Judge,
concurring in part and dissenting in part:
This case involves a workplace allegedly made hostile by the conduct of a customer of the employer. In recognizing that employers can be liable in cases where the harassing conduct was that of a third party, the majority extends the scope of Title VII beyond what the Supreme Court has so far recognized. I have grave concerns about such an extension when hostile work environment claims were themselves an extension of Title VII, which was designed to regulate the employer-employee relationship.
But even recognizing that there are some adventuresome cases concluding that an employer can be liable for its failure to take action to protect its employees from a third party’s harassment, see, e.g., Dunn v. Wash. Cnty. Hosp., 429 F.3d 689, 691 (7th Cir.2005), I conclude that the majority’s opinion today goes so far that it cannot find support even in them. An employer in this kind of case may be liable at most for its own negligence in allowing the conduct of its customers to turn its workplace into a hostile work environment — i.e., a work environment that, as a result of the customers’ conduct, becomes “permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [an employee’s] employment.” Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotation marks and citations omitted). As a negligence case, the analysis must focus on identifying when the employer knew or should have known that its employee was being subjected to harassment based on the employee’s “race, color, religion, sex, or national origin,” 42 U.S.C. § 2000e-2(a)(l), and then on evaluating the adequacy of the employer’s response at that point. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 759, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).
In this case, the majority concludes that a reasonable jury could find Dal-Tile liable under Title VII for discriminating against Lori Freeman, its employee, because it permitted a Dal-Tile customer, Timothy Koester, to engage in continuous sex-based and race-based harassment of Freeman for three years. I believe, however, that a closer review of the record does not support that overly generalized conclusion.
The record only supports the inference that Koester’s conduct rose to the level of actionable harassment in the summer of 2009. To be sure, Koester’s conduct in the office prior to that point had been coarse, crude, and ugly. But there is insufficient evidence in the record to allow a reasonable jury to conclude that, prior to the summer of 2009, his conduct had created a hostile or abusive working environment for Freeman at Dal-Tile. In August 2006 (shortly after Freeman began her employment at Dal-Tile), Freeman did hear Koester use the phrase “black bitches” in Dal-Tile’s office when referring to a photograph of two former employees. But she also heard a Dal-Tile assistant manager, Sara Wrenn, immediately respond to *427 Koester, directing him “not to use that language here.” J.A. 76. And for nearly three years thereafter, Freeman “carried on a working relationship with [Koester],” describing herself as being “friendly with [him] as long as he wasn’t making ... lewd comments.” J.A. 126. When Freeman thought Koester was behaving inappropriately, she would tell him to cut it out, just as her coworkers did. As Wrenn explained:
[T]he minute [Freeman] started with [Dal-Tile], she fit right in with us. And, you know, everybody knew that [Koester] ran his mouth, and you know, like I said, it was never malice, it was never malicious. He was just crude, and everybody knew exactly how to handle him and put him in his place, and Lori [Freeman] fell right into that, and she had no problems calling him out....
J.A. 292. Similarly, Freeman stated that she had a good working relationship with all of her coworkers, describing the office as “very close knit.” J.A. 58. Thus, unlike the circumstances presented in EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 170 (4th Cir.2009), and Mosby-Grant v. City of Hagerstown, 630 F.3d 326, 330 (4th Cir.2010), where the plaintiff-employees were surrounded by multiple individuals who regularly referred to women as “bitches” and engaged in other demeaning conduct, the record here is clear that Koester was the outlier in an otherwise harmonious and harassment-free office environment.
A jury could find, however, that the circumstances for Freeman did change in the summer of 2009 when she reasonably began to perceive Koester’s conduct as being so offensive as to make her work environment abusive. This is when Koester told Freeman that he was as “fucked up as a nigger’s checkbook” and then, several weeks later, called her a “black bitch.” But it was also at this point that Dal-Tile intervened to protect Freeman. The day after Koester made the “black bitch” comment to Freeman, Dal-Tile told Koester that he was suspended from the premises. And while Dal-Tile eventually agreed to conduct business with Koester again, it was only with restrictions in place that ensured that Freeman would not have to interact with him. Indeed, Koester never made another inappropriate remark in Freeman’s presence.
This is not a case where an employer knew that its employee was experiencing actionable harassment but did nothing in response. Rather, the record shows that Dal-Tile did indeed intervene and intervened effectively. I would accordingly affirm the district court’s summary judgment in favor of Dal-Tile on all of Freeman’s claims, including her hostile work environment claims.