**Jane E. JOHNSON, Plaintiff,**

v.

**Everett S. RICE, John H. Bocchichio, and Eugene Hoffman, Defendants.**

**No. 8:01–CV–1304–T–23MSS.**

United States District Court, M.D. Florida, Tampa Division.

Sept. 5, 2002.

Robert G. Walker, Jr., Law Office of Robert G. Walker, Jr., Clearwater, FL, for Plaintiff.

Richard C. McCrea, Jr., Ryan D. Barack, Zinober & McCrea, P.A., Dawn Siler-Nixon, Bindu J. Rao, Ford & Harrison LLP, Tampa, FL, for Defendants.

### ORDER

LAZZARA, District Judge.

This cause comes before the Court on Defendant Everett S. Rice's Motion for Summary Judgment (Dkt. 35) and Plaintiff's Response in Opposition thereto (Dkt. 421). The parties filed various exhibits in support of their positions. (Dkts. 36, 43, & 44)

### Plaintiff's Claims for Relief

Plaintiff Jane E. Johnson ("Johnson") sues Defendant Everett S. Rice ("Rice"), Sheriff of Pinellas County, Florida, for sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended 42 U.S.C. § 2000e, et seq., the Florida Civil Rights Act of 1992 ("the FCRA"), §§ 760.01–760.11, Fla. Stat. (1999). She also sues Rice for racial discrimination in violation of 42 U.S.C. §§ 1981 and 1983, Title VII, and the FCRA. Johnson seeks compensatory damages, injunctive and equitable relief,

and recovery of costs and attorney's fees. In an earlier Order, the Court granted final summary judgment in favor of Defendants John H. Bocchichio and Eugene Hoffman on Johnson's claims against them.

### Plaintiff's Factual Allegations.

Johnson began employment with the Pinellas County Sheriff's Office ("PCSO") on April 15, 1997, and became a bailiff on November 25, 1997. Johnson was initially assigned to the Civil Court Complex ("Civil") at the Sixth Judicial Circuit Court in Pinellas County. Eugene Hoffman ("Hoffman") was the sergeant in charge of all bailiffs assigned to Civil. John H. Bocchichio ("Bocchichio"), a lieutenant, supervised the day-to-day operations of the entire bailiff section of PCSO.

Johnson alleges that on or about November 26, 1997, Hoffman made jokes of a sexual nature in front of her and other employees, both male and female, during the lunch hour. Johnson admits that she cannot describe the sexual content of the jokes because she left the room. (*See* Johnson Deposition, p. 208.) Hoffman also allegedly asked Johnson, in front of the other employees, whether she smoked while having sex. Johnson allegedly responded, "No, I'm a nun, I don't do nothing. I'm a nun." (*See id.* at 213–15, 219, 221, & 222.) Hoffman asserts that the employees who were present at the time were engaging in mutual banter.

Next, Johnson claims that on or about November 27, 1997, she and another bailiff were walking through the courthouse when they encountered Hoffman and he stated, "this feels like a good time to have an orgasm." Johnson admits that the comment was directed to someone else. (*See id.* at 214:15–24.) She also asserts that Hoffman made an unspecified sexual comment in her presence in December, 1997.

Johnson contends that neither of the remarks was provoked. She also states that while she did not verbally object to any of Hoffman's aforementioned remarks, her displeasure with them was communicated through her reactions and facial expressions.

Johnson maintains that a short time after these encounters with Hoffman occurred, she discussed them with some of the other female bailiffs in Civil and learned that sexual banter was common there and that Hoffman was the primary instigator. Johnson states that she did not complain about Hoffman's conduct to any of her superiors because she did not want to be labeled a troublemaker, or made an outcast, after only two days on the job. Johnson avers that she did make efforts to avoid Hoffman after these encounters, but that avoidance was not always successful due to the close working environment in Civil. Johnson alleges that Hoffman continued to make remarks of a sexual nature to her and to others. Johnson admits that she was never restrained in any way and was always able to walk away, outside of hearing distance, when Hoffman made any sexually oriented comments or jokes.

On or about February 3, 1998, Johnson allegedly overheard Hoffman telling an offensive sexual joke relating to a prostitute and former President Clinton in the presence of other male and female employees. Johnson alleges that the female bailiffs who were present at the time remained silent. Johnson also alleges that in February, 1998, Hoffman recounted a joke about the difficulty of working with women which appeared in an issue of *Reader's Digest*. Plaintiff admits that this joke was not sexual in nature.

Johnson alleges that on February 19, 1998, she first complained to Bocchichio about Hoffman's conduct. She contends that Bocchichio indicated Hoffman had a

history of making inappropriate sexual comments and that Hoffman had been reprimanded for his conduct in the past. At some point, Johnson obtained a memorandum written by Bocchichio wherein he identified four female bailiffs who had previously complained about Hoffman's conduct. (*See* Dkt. 3, Ex. A.) Apparently, Bocchichio had warned Hoffman about his conduct and placed a written counseling form in his personnel file. Johnson asserts that there was no continuing oversight of Hoffman and that Bocchichio's warning went unheeded.

Johnson maintains that she told Bocchichio she wanted Hoffman's remarks to stop. Bocchichio allegedly assured her that he would handle the matter. Evidently, Bocchichio did counsel Hoffman about his conduct because Johnson avers that later that same day, Hoffman sought her out and apologized to her. However, she adds that Hoffman quickly returned to making sexual remarks to her and other employees and that it was impossible for her to avoid him. Johnson contends that Hoffman delighted in her torment, although she does not provide any specific allegations concerning these other incidents of inappropriate behavior by Hoffman. Johnson maintains that although everyone felt Hoffman's behavior was improper, it was tolerated. She maintains that there is incredible pressure to remain silent about these types of matters due to fear of being blackballed in PCSO.

Johnson next asserts that shortly after she complained to Bocchichio she suffered several adverse personnel actions. First, she was allegedly assigned a time slot that all the bailiffs considered to be the least desirable. Second, she was allegedly assigned the least desirable Magnetron position. Third, she was allegedly given more arduous assignments than the other bailiffs. Finally, she was allegedly not permitted to take flex time to attend college courses, as other bailiffs had been allowed to do. However, Johnson admits that bailiffs rotated among the judges on a weekly basis, that Hoffman had no control over the individual judges' court schedules, and that she has no personal knowledge of how bailiffs' schedules are determined. (*See* Johnson Deposition, pp. 148:16–18; 172:1–21; 204:20, 205:1.) Johnson even concedes that Bocchichio did not retaliate against her. (*See id.* at 235:7–11, 20–23.)

Johnson alleges that in talking to Bocchichio on a few other occasions, she stated that Hoffman was "still at it." Bocchichio offered to transfer Johnson to the Criminal Court Complex ("Criminal"). Johnson maintains that she did not want to leave Civil because it was closer to her school and because the environment in Criminal was even less desirable. However, on October 5, 1998, Johnson was reassigned to Criminal after complaining about Hoffman's conduct during the months of August and September, 1998. Johnson was allegedly told that she would have to transfer because Hoffman could not be moved. Plaintiff admits that she has no personal knowledge as to who made the decision to transfer her or as to why the transfer was being made. (*See id.* at 124:4–16.)

A corporal with PCSO advised Hoffman that the transfer to Criminal was being made for training purposes and that it would only be for a duration of two months. Johnson believes, based solely on her "gut feeling," that this explanation was pretextual and that she was not transferred in an effort to stop Hoffman's inappropriate behavior, but rather, to silence her complaints about it. However, Johnson concedes that the Bailiff Field Training Officer ("BTO") program in Criminal is more extensive that what is customarily offered at the other court facilities. She

also concedes that the needs of PCSO may require changes and that the Sheriff, through his agents, may reassign personnel for the good of the agency. Finally, Johnson's transfer was a lateral move that did not result in any change in compensation or benefits.

Johnson alleges that upon her arrival at Criminal, she was isolated and treated differently than her primarily white male peers. At one point in her Complaint, she alleges that all black bailiffs in Pinellas County are assigned strictly to Criminal and that there are no black supervisors. She contends that black bailiffs are routinely assigned to less desirable shifts, segregated into separate meeting and dining facilities, and denied promotions and other opportunities to work in more responsible positions. None of Johnson's claims of racial discrimination is directed at Hoffman or Bocchichio.

Johnson maintains that she was branded a troublemaker in Criminal for having reported Hoffman's conduct. Johnson was initially assigned two BTO trainers who allegedly were regarded by the other bailiffs as the worst trainers in the program. She contends that her time in the program was extended due to poor evaluations of her performance by the two trainers. Johnson alleges that her assignment to these trainers was made in retaliation for her complaints about Hoffman.

Johnson alleges that she complained about her problems with the trainers and her perception of retaliation. She was then assigned two new trainers who treated her fairly and gave her much higher performance reviews. Next, Johnson asserts that after she completed the program, she began hearing rumors that management was trying to get rid of her for being a troublemaker. Johnson urges that she suffered emotion trauma and distress due to the sexually hostile work environment and racial discrimination that existed at the courthouses. She contends that Hoffman and Bocchichio acted within the scope and course of their employment at all times relevant to this action. She maintains that her superiors, including Rice, were well aware of her complaints against Hoffman, as well as the nature, extent, and frequency of Hoffman's conduct, and failed to take effective remedial action.

### Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted). On a motion for summary judgment, the court must review the record, and all its inferences, in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The Court finds that there are no genuine issues of fact as to any claims raised against Rice and that he is entitled to final summary judgment.

### Discussion

■ To establish a sexual harassment hostile work environment, Plaintiff must show, based on all circumstances, that (1) the conduct was based on her sex; (2) the conduct was sufficiently severe or pervasive to alter the terms or conditions of her employment and create a "hostile or abusive" working environment; (3) she was subjectively offended by the comments or conduct; and (4) that Hoffman acted under color of state law and with discriminatory intent. *See Harris v. Forklift Sys., Inc.*,

510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In its earlier Order granting final summary judgment for Hoffman, the Court found that Johnson failed to meet the *Harris* standard.

■■■ Johnson fails to establish that any of the alleged conduct was based on her sex. A mandatory element of a sexual harassment hostile work environment claim is that the "harassment complained of must be based upon gender." *Cross v. State of Alabama Dept. of Mental Health,* 49 F.3d 1490, 1504 (11th Cir.1995). "Workplace harassment, even harassment between men and women, is not automatically discrimination because of sex merely because the words used have sexual content or connotations." *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). "Where the conduct complained of is equally offensive to male and female workers ... the sexual harassment would not be based upon sex because men and women are accorded like treatment." *Cross,* 49 F.3d at 1504. In the Complaint, Johnson admits that Hoffman's comments were made in the presence of males and females and that "even male employees thought that the jokes were inappropriate and created an abusive working environment."

■■■ In addition, Johnson fails to meet the second prong of the *Harris* standard. To establish the threshold of severity and pervasiveness prong of *Harris,* the Eleventh Circuit noted that an objective and subjective component must be present. *See Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1244 (11th Cir.1999), *cert. denied,* 529 U.S. 1068, 120 S.Ct. 1674, 146 L.Ed.2d 483 (2000). The objective component requires consideration of: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *See id.* at 1246. Johnson falls far from establishing the objective component, thus there is no need for the Court to address the subjective component. The alleged comments and jokes by Hoffman were made over a period of six to seven months. Also, the jokes were not physically intimidating or objectively humiliating. Johnson does not allege that Hoffman touched her or that the two of them were ever alone together. In fact, she concedes that only one of Hoffman's comments was ever directed at her, that she did not consider three of Hoffman's comments to be sexually harassing or offensive, and that she did not hear two of the jokes in their entirety. (*See* Johnson Deposition, pp. 208:6–15, & 22–24; 211:24–212:1; 212:22–24; 213:2–5, 16; 214:2 & 17–24; 216:21–23; 217:25–218:10, 221:25; 222:8, 224:13–18, 227:4–9.) Johnson also admits that Hoffman's comments and jokes did not affect her job. (*See id.* at 141:2–13; 206:13–207:5.)

Johnson does not allege that Bocchichio engaged in any sexual harassment. With respect to Johnson's transfer, she admits that she has no personal knowledge as to who made the decision to transfer her or as to why the transfer was being made. Johnson even concedes that Bocchichio did not retaliate against her. Johnson also admits that Bocchichio took prompt action calculated to end the alleged harassment. (*See* Johnson Deposition, pp. 113:13–114:15.) By Johnson's own admission, Bocchichio investigated Johnson's allegations and counseled Hoffman about his conduct, and as a result, Hoffman apologized to Johnson. In addition, Johnson fails to specifically identify any improper comments made by Hoffman after her complaint to Bocchichio. She admits that the transfer remedied all alleged sexual harassment by Hoffman and allowed her

to benefit from the Criminal Court Complex's more comprehensive training. (*See id.* at 99:20–100:6, 103:21–104:1, 104:20–22, 105:3–11.) Johnson fails to show that Bocchichio had a discriminatory purpose in taking action calculated to end the harassment. Indeed, she has nothing but positive things to say about Bocchichio. (*See* Johnson Deposition, p. 122:17, 21, 22–23.) In its prior Order, the Court granted final summary judgment for Bocchichio on all of Johnson's claims against him.

An employer is not subject to vicarious liability for hostile work environment sexual harassment when reasonable care was exercised to promptly prevent and correct any harassing behavior. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). The remedial action is sufficient if it is "reasonably likely to prevent the misconduct from recurring." *Kilgore v. Thompson & Brock Mgmt.,* 93 F.3d 752, 754 (11th Cir.1996) (internal quotation and citation omitted); *see also Landgraf v. USI Film Prods.,* 968 F.2d 427, 430 (5th Cir.1992), *aff'd,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1996) (reprimand and attempt to reduce plaintiff's contact with alleged harasser was sufficient to support judgment for employer, even though the harassing conduct continued). In this case, the evidence reveals that Rice has a comprehensive anti-harassment program. Johnson testified that she was aware of Rice's policies prohibiting discrimination and harassment and utilized them to complain about Hoffman. Bocchichio promptly and appropriately responded to Johnson's complaints. Johnson cannot meet her burden of establishing a basis for employer liability against Rice.

Likewise, and as was previously discussed in the Court's earlier Order, Johnson cannot establish a prima facie case for retaliation. To establish a prima facie case, she must show: (1) she engaged in protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse action. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1287 (11th Cir.1997). Johnson fails to show any adverse employment action on the part of Hoffman or Bocchichio which resulted in "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). The Eleventh Circuit has ruled that a change in assignment or duties with no loss of pay, benefits, or title, such as what allegedly occurred in the case at bar, is simply not an adverse employment action. *See Gupta v. Florida Board of Regents,* 212 F.3d 571, 587 (11th Cir.2000), *cert. denied,* 531 U.S. 1076, 121 S.Ct. 772, 148 L.Ed.2d 671 (2001). Johnson also fails to show a causal link between the alleged protected activity and the alleged retaliation. She admits that her only evidence of retaliation is her "gut feelings." Because Johnson fails to establish a prima facie case for retaliation against Hoffman and Bocchichio, there is no basis for a claim against Rice for employer liability.

Finally, Johnson attempts to make out a claim for racial discrimination against Rice. To establish a prima facie case of race discrimination, Johnson must show: (1) that she belongs to a protected group; (2) that she suffered an adverse employment action; and (3) the adverse employment action gives rise to an inference of discrimination. As detailed above and in the Court's earlier Order, Johnson has not suffered any adverse employment actions during her employment with the

PCSO. She continues to be employed by the PCSO, continues to receive her same compensation, and continues to perform exactly the same duties. In her deposition, Johnson testified that she enjoyed very good relationships with her coworkers and that her ability to get along with them was excellent.

It is also worth noting that Johnson's allegations that she suffered racial discrimination at the PCSO are vague and conclusory. Johnson alleges that upon her arrival at Criminal, she was isolated and treated differently than her primarily white male peers. At one point in her Complaint, she alleges that all black bailiffs in Pinellas County are assigned strictly to Criminal and that there are no black supervisors. She contends that black bailiffs are routinely assigned to less desirable shifts, segregated into separate meeting and dining facilities, and denied promotions and other opportunities to work in more responsible positions. "Conclusory allegations without specific supporting facts have no probative value." *Hilburn v. Murata Elecs. N. Am., Inc.,* 181 F.3d 1220, 1228 (11th Cir.1999) (internal citation omitted). Based on all the foregoing, the Court finds that no genuine issue exists with respect to Johnson's claim of racial discrimination and, therefore, Rice is entitled to summary judgment on that claim.

**ACCORDINGLY,** it is **ORDERED AND ADJUDGED:**

Defendant Everett S. Rice's Motion for Summary Judgment (Dkt. 35) is granted. The Clerk shall enter final judgment in favor of Defendant Rice. Inasmuch as final summary judgment has now been entered in favor of all Defendants, the Clerk shall close this case.