Debora J. CARPENTER, Plaintiff

v.

HEALTHSOUTH CORPORATION, et al., Defendants

No. CIV.A.3:02CV 99–J.

United States District Court, W.D. Kentucky, At Louisville.

Oct. 28, 2003.

C. Mike Moulton, Lyn Taylor Long, Moulton & Long, Elizabethtown, KY, for Plaintiff.

J. Keith Coates, Jr., Kelly D. Ludwick, L. Traywick Duffie, Rebekah K. Herman, Hunton & Williams, Atlanta, GA, John B. Moore, Phillips, Parker, Orberson & Moore P.L.C., Louisville, KY, for Defendants.

## MEMORANDUM OPINION

JOHNSTONE, Senior District Judge.

This case presents plaintiff's claim that her employer discriminated against her because she was female, retaliated against her for her unwillingness to tolerate sex discrimination, and created intolerable working conditions.[1] The matter is before the Court on defendants' motion for summary judgment. After examining the materials of record, the arguments of the parties and the applicable authorities, the Court is of the opinion that there is no genuine dispute of material fact, and defendants are entitled to judgment as a matter of law.

In late 1999, Ms. Carpenter began work as the Accounting Supervisor for one of HealthSouth's hospitals. Her position reported to HealthSouth's Area and Regional Controllers and to her own Hospital's Chief Operating Officer—initially Theresa Strenko, and, as of March 2000, Mark Floro. During the period June through September 2000, Ms. Carpenter had a disagreement with some of her superiors regarding the appropriateness of a pay raise for a female employee she supervised.

In July of 2000, Carpenter submitted her application for Area Controller. She had a conversation with Mark Floro shortly thereafter, during which he suggested she probably would not want the job because it involved a lot of traveling. Over the Labor Day weekend, Carpenter and Floro had a heated conversation, the exact nature of which is disputed. On Monday, September 5, Carpenter submitted her letter of resignation (effective two weeks later) to Floro's administrative assistant. On that same day, the administrative assistant told Carpenter that Floro was offering Carpenter an interview for the Area Controller position; Carpenter rejected the offer, saying it was "too late."

In February of 2001, plaintiff filed an EEOC complaint. When investigation of the EEOC terminated, plaintiff filed suit pursuant to KRS 344.040, which makes it unlawful for an employer "to discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex.".

Carpenter contends that she was not offered an interview for the Area Controller job because she was female and/or because she had complained that the failure to give a raise to her subordinate employee represented sex discrimination. In addition, she contends that her resignation was actually a constructive discharge, as the conversation she had with Floro over the weekend represented "the straw that broke the camel's back."

The parties agree that to make out a *prima facie* case, plaintiff must show 1) that she was a member of the protected class, 2) that she applied for a vacant position, 3) that she was qualified for the position, and 4) that the position was awarded to someone outside the protected

1. Plaintiff has withdrawn her sexual harassment claim.

class. *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Defendants argue that she cannot show the existence of the second element because she withdrew her application on September 5. Carpenter responds, "Since Carpenter had resigned prior to the offer for an interview, she can not be considered to have withdrawn her application." Response to Motion for Summary Judgment at 5. While the statement is somewhat obscure, the Court gathers that it is intended to suggest that the chain of events should be viewed as terminating upon Carpenter's submission of her resignation letter.

Defendants' evidence is that Floro had not read Carpenter's resignation letter before instructing his assistant to schedule an interview with Carpenter for the Controller position, and plaintiff admits that she does not have a basis for disputing this. However, even if the Court assumes, without deciding, that there is a factual dispute as to whether Floro was aware of Carpenter's resignation at the time he offered her an interview, it does not appear that such a dispute would be material. The interview was offered on September 5; Carpenter's resignation was not to be effective until September 19. Indeed, even if the Court assumes for purposes of this motion that the interview was offered *because of* the resignation letter, the fact remains that she *was* considered for the position; when Carpenter declined the interview, she made it impossible for defendants to award her the job. There is no way to interpret her refusing the interview other than that she was withdrawing herself from consideration for the position.

■ To establish actionable retaliation, Carpenter must show that she opposed an illegal employment practice, that she suffered an adverse employment action, and that there was a causal connection between her opposition and the adverse action. *Mountain Clay v. Commission on Human Rights,* 830 S.W.2d 395 (1992). Carpenter claims that after she suggested that the unwillingness of authorities to give a pay raise to her subordinate employee might be sex discrimination, the "situation ... changed, leading up to the failure of HealthSouth to consider her for the promotion to Controller." Responsive Brief at 6. Thus, it appears that the adverse action she alleges is failure to be considered for the job of Controller. As noted, she simply cannot establish the truth of such an assertion: Before the final hiring decision was made, Carpenter was offered an interview for the job of Controller. Accepting or declining the interview was solely within Carpenter's control. When she declined that offer, she withdrew herself from consideration for the job.

■ The only remaining question is whether *delay* in being considered for the position of Controller constituted actionable adverse action. In light of her comment that the interview was offered "too late," one might speculate that she would not have resigned had she been invited to interview earlier. To the extent she implies that conditions were so intolerable that she did not truly have the ability to accept the interview, this is inseparable from her claim of constructive discharge, which will be discussed below. To the extent she is claiming something short of that, she has failed to show "adverse action." Issues of when candidates were interviewed, in what order, and by what process are nothing more than intermediate steps toward an employment decision; neither law nor reason supports the notion of treating such steps as adverse actions in themselves. The Court is unable to perceive a cause of action based on delay in offering an interview for the Controller position.

■ This leaves the question of constructive discharge. Carpenter alleges that "circumstances changed" after she raised questions of sex discrimination with respect to failure to give a raise to a subordinate employee. Although she now concedes that these "circumstances" did not rise to the level of a "hostile work environment," she continues to argue that her working conditions were objectively intolerable. A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). *Harris* explains that the circumstances must be so "severe and pervasive" that a reasonable person would find it hostile or abusive, and the plaintiff must subjectively regard the environment as abusive. *Id.* at 21–22, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295.

■ In the current case, plaintiff identifies neither severe nor frequent incidents. A single incident will rarely satisfy the standard. *Highlander v. K.F.C. Nat'l. Mgmt. Co.*, 805 F.2d 644, 649–50 (6th Cir. 1986) Taking as true her accounts of the Labor Day weekend exchange with Florio, the Court agrees that an unprofessional and offensive utterance took place; nonetheless, Carpenter does not suggest that such interchanges were typical of her work environment, nor can the Court agree that this single incident was serious enough to constitute an objectively intolerable environment on its own.

■ However, the Court recognizes its duty to look at the circumstances in their totality. In considering the totality of the circumstances, the Court should not try to separate the various retaliatory incidents that the plaintiff claims and determine whether any one would be intoler-

able; doing this would inappropriately rob them of their cumulative effect. See *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir.1999). The Court notes, however, that the incidents Carpenter cites were not frequent, were not physically threatening or humiliating, were not serious, either individually or cumulatively, and did not unreasonably interfere with Carpenter's work performance. The Court concludes that no reasonable jury could find the circumstances "sufficiently severe or pervasive to alter the conditions of the victim's employment and [to] create an abusive working environment." *Harris, supra*, 510 U.S. at 21, 114 S.Ct. 367.

For the foregoing reasons, the Court concludes that there is no genuine issue of material fact, and defendants are entitled to judgment as a matter of law. An order in conformity has this day entered.

## SUMMARY JUDGMENT

This matter having come before the Court on defendants' motion for summary judgment, and the Court having entered its Memorandum Opinion and being advised,

IT IS ORDERED that defendants' motion for summary judgment is granted.

This is a final and appealable order and there is no just cause for delay.