**Elizabeth GOMES, Plaintiff–Appellant,**

v.

**PRIME DESIGN, INC., Defendant–Appellee.**

No. 02–3775.

United States Court of Appeals, Sixth Circuit.

Dec. 16, 2003.

Christopher P. Thorman, Christina M. Royer, Cleveland, OH, for Plaintiff–Appellant.

Walter J. McNamara, III, McNamara, Hanrahan, Callender & Loxterman, James S. Callender, Jr., McNamara, Hanrahan &

Loxterman, Mentor, OH, for Defendant–Appellee.

Before MERRITT, DAUGHTREY and GIBBONS, Circuit Judges.

PER CURIAM.

In this gender discrimination case under Title VII, the plaintiff raised claims of hostile work environment and retaliatory discharge. She had complained to her employer in writing that supervisors had spoken to her using "vulgar language and hostility." The discharge letter she received the next day said that "your services are no longer required effective" immediately "in view of your sensitivity and apparent perception regarding hostility." The district court, calling the conduct of company officers "immature and distasteful," granted summary judgment for the company on the following grounds: (1) "considering the totality of the circumstances," "a reasonable person could not find the environment objectively hostile" and could not find that the offensive conduct in question was based on sex, and (2) plaintiff's complaints "did not rise to the level of protected activity" because she did not complain about gender-related discrimination and therefore foreclosed her retaliatory discharge claim. Considering the deposition and documentary evidence presented by plaintiff in its most favorable light, as we must upon defendant's motion for summary judgment, we conclude that the work environment created by the defendant, although distasteful and upsetting to plaintiff, was not sufficiently severe or pervasive to constitute sexual harassment resulting from a hostile work environment. We also conclude that the district court did not err in granting summary judgment on her retaliation claim.

## I.

There is no serious legal question presented in this case, and the facts are undisputed. Plaintiff's argument that she suffered discrimination depends heavily on her own deposition testimony. She had worked for the company for approximately six months in a clerical capacity usually sitting at a desk in the reception area. She testified that both her immediate supervisor, Mr. Fusco, and his boss, Mr. George, the company president, created a work environment that was hostile to her as a female. She said that Fusco would sometimes refer to a woman as a "dumb bimbo," and gave these examples of perceived sexual harassment: (1) George stood in front of her at her desk and said he was going to change clothes right there. She turned to face the wall and heard him unzip and rezip his pants and say, "I'm done." (2) George also stood in front of her without a shirt on, asked whether she was offended, pinched his nipples and said his "nipples were hard" and "cold." (3) Fusco, her supervisor, repeatedly used the word "fuck" as an expletive in front of her. (5) When asked to change a light bulb in the restroom, he offered her a flashlight and said, "What's the matter, don't you know where your parts are?" While she later testified that she regarded these kinds of incidents as demeaning to women and as demonstrating hostility toward her as a woman, her main complaint at the time of the events had to do with the fact that she disliked being "yelled at" and was offended by what she described as the men's use of "profanity" in her presence. At one point, she advised George that she wished to be "treated as a lady."

In her letter to George of July 23, 1999, the plaintiff wrote that she "[did] not appreciate being spoken to with vulgar language and hostility" and "being screamed at." She specified that she "[did] not appreciate being spoken to with the 'F' word and hostility." She made no mention of

any other conduct she found offensive. The company's response by letter the next day was to discharge her because "this office will not provide you with a workplace in which you are comfortable." Fusco and George regarded her sensitivity to these incidents as unreasonable and her complaints as hypercritical.

## II.

■ Under Title VII, 42 U.S.C. § 2000e–2(a)(1) 2002, in order to prevail, the plaintiff must establish sexual harassment resulting from a hostile work environment – an environment that is "seriously and pervasively hostile" due to gender-based harassment. *Williams v. General Motors Corp.,* 187 F.3d 553, 560–61 (6th Cir.1999). The district court did not find the hazing that plaintiff received from George and Fusco to be sufficiently "severe and pervasive" or evince sufficient anti-female bias to pass muster under the above standard. The inquiry raises both objective and subjective problems and depends on the "totality of the circumstances," *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

Given these broad standards, the district court did not err in applying them to the several separate incidents recited above. These incidents occurred over six months. A reference to her "parts" and a threat to undress in front of her were isolated instances of offensive conduct that the district court condemned. But they do not create the sustained female environment under the *Harris* test that meets its objective totality of the circumstances standard. In view of the isolated nature of the offensive conduct, the trial court did not err in granting summary judgment on her *Harris* claim.

## III.

■ Plaintiff's discharge came as a direct, immediate response to her letter complaining of "vulgar language and hostility." No direct reference is made to sexual harassment or gender based conduct in her letter. George and Fusco became convinced that she was an overly sensitive, disgruntled employee who could not be reasonably accommodated and would become more and more dissatisfied. The discharge letter simply concluded that "it is painfully apparent to me that this office will not provide you with a workplace in which you are comfortable." Counsel for plaintiff at oral argument stated that Fusco in his deposition testified that he and George discussed "sexual harassment policy" upon receipt of her letter before discharging her and that a fact finder would be entitled to infer retaliation from this discussion. We find no such reference in the record and no other statement or fact that would give rise to an inference that plaintiff's letter or complaints were about gender-based conduct, as distinguished from unpleasant or otherwise offense conduct. The fact that the company adopted a written policy on conduct in the workplace after this action was filed does not give rise to an inference of retaliation. Although it may well be true that the principals of this small company mistreated plaintiff at times, it does not appear that the mistreatment met the *Harris* test or that the discharge was gender-based. Plaintiff did not relate her problems to gender bias during the time she was employed or in her June 23 letter. Her gender-bias theory was constructed months after the events in question and does not appear to describe the offensive conduct or the reason for her discharge.

Accordingly, the judgment of the district court is affirmed.