**Scott SINGLETON, Plaintiff,**

v.

**CITY OF NEW YORK, Defendant.**

**No. 05 Civ. 7769(JSR).**

United States District Court,
S.D. New York.

Aug. 3, 2007.

---

Fred Lichtmacher, Fred B. Lichtmacher, New York, NY, for Plaintiff.

Diana Marsh Murray, NYC Law Department, Office of the Corporation Counsel, New York, NY, for Defendant.

## MEMORANDUM ORDER

RAKOFF, District Judge.

Following a five-day trial, the jury awarded Scott Singleton $1,000,000 in damages on his claim that the City of New York had subjected him to a hostile work environment on account of his gender.[1] The City now moves for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) or, in the alternative, for a new trial or remittitur pursuant to Fed.R.Civ.P. 59.

The motions for judgment as a matter of law and for a new trial on the merits border on the frivolous. Based on the evidence adduced at trial, a reasonable jury could, and almost certainly did, find the following facts:

At all times here relevant, Singleton worked as a corrections officer at the Rikers Island facility of defendant's Department of Corrections ("DOC"). While working there, Singleton was subjected to repeated uninvited romantic advances by one of his superiors, Captain Robin Walker.[2] When Singleton spurned her advances, Walker, as she had with other men who had rejected her overtures, retaliated against Singleton, both on the job and off, with everything from false complaints about his work to stalking his movements. The hostility thus engendered pervaded Singleton's workplace atmosphere, causing him emotional distress, which was further heightened when Walker sent Singleton's girlfriend, who was also the mother of his child, an anonymous "poison pen" letter falsely accusing him of having an affair with another employee.

■■■ Of the potpourri of points raised by defendant in its Rule 50(b) motion and in the portion of its Rule 59 motion seeking an entire new trial, only two even merit discussion. First defendant claims that Singleton did not show that Walker's harassment interfered with Singleton's work performance. Factually, this is untrue, as Singleton testified, *inter alia*, that Walker's misconduct made him "so depressed . . . that [he] couldn't work effectively." Trial transcript ("tr.") 2/14/07, at 90. Legally, moreover, it is unnecessary, since the Supreme Court has made clear that "no single factor is required" to prove that harassment on account of gender is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Thus, even if the harassment did not unreasonably interfere with plaintiff's work performance, he may still recover if it served to create a pervasively hostile work environment that rendered his workplace abusive. Were it otherwise, the victim of sexual harassment who was sufficiently conscientious to maintain good work performance in the face of the hostility would be left, perversely, without a remedy.

---

**1.** The jury found defendant liable for creating a hostile work environment on account of gender in violation of both federal law (specifically, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*) and New York State law (specifically, the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*). In all respects here relevant *except* damages (discussed *infra*), the same standards govern both laws.

**2.** Prior to trial, the City conceded that it was legally responsible for Walker's acts and was not raising any defense to the contrary. *See, e.g.*, transcript 2/14/07 at 36–37. *See generally Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

■ Second, defendant contends that the Court erred in its admission into evidence of the anonymous "poison pen" letter and a related anonymous phone call that plaintiff's then girlfriend, Sylvia Powell, received at their shared home, accusing plaintiff, in very graphic terms, of having an affair with another woman. The argument is not just that these items were insufficiently linked to Walker (a meritless position since the evidence that Walker authored the letter and made the call was overwhelming), but that the call and letter did not relate to the workplace. *See Butler v. Ysleta Independent School Dist.,* 161 F.3d 263 (5th Cir.1998). However, unlike the anonymous letters in *Butler,* the anonymous letter and phone call here at issue were unambiguously linked to plaintiff's place of employment in various pertinent respects. To begin with, the letter specifically describes plaintiff's activities at work and discusses plaintiff's behavior with female colleagues at "the jail," the "mess hall," and on "his post." *See* tr., 2/14/07, at 44–45. Further, as plaintiff testified, the letter and phone call were a form of direct retaliation for Singleton's rejection of Walker's advances made at the workplace, as well as an attempt to improve Walker's chances by eliminating a rival. *See id.* at 54. Most importantly, by demonstrating the lengths that Walker was prepared to go, the phone call and letter greatly, and reasonably, increased the fear Singleton felt from Walker's abusive conduct on the job. For example, it contributed to Singleton's fear, when Walker followed Singleton for months as he left the facility at the end of the day, that he might actually face physical retaliation. *See id.* at 59–60.[3]

■ Defendant's motion for judgment as a matter of law, and its related motion for an entire new trial, are, in short, wholly lacking in merit. The same is not true, however, of defendant's motion for remittitur. Because the jury's $1 million verdict did not distinguish between state and federal claims, the Court will consider the entire jury award as if it were allocated to plaintiff's state claim and therefore not subject to the $300,000 cap imposed under Title VII. *See Magee v. U.S. Lines, Inc.,* 976 F.2d 821, 822 (2d Cir.1992)("[W]here only a single award of damages, not segregated into separate components, is made, the preferable rule, we think, is that the successful plaintiff be paid under the theory of liability that provides the most complete recovery."); *see also Gonzalez v. Bratton,* 147 F.Supp.2d 180, 204 (S.D.N.Y. 2001).

■ New York law requires that the Court grant remittitur when a jury award "deviates materially from what would be reasonable compensation." N.Y. C.P.L.R. § 5501(c). *See Patterson v. Balsamico,* 440 F.3d 104, 119 (2d Cir.2006); *Meacham v. Knolls Atomic Power Lab.,* 381 F.3d 56 (2d Cir.2004), *vacated on other grounds* 544 U.S. 957, 125 S.Ct. 1731, 161 L.Ed.2d 596 (2005). In employment discrimination cases involving emotional distress that does not reach extraordinary levels, New York courts have often reduced the damages to $30,000 or below, *see Meacham,* 381 F.3d at 78 (collecting cases), and have rarely upheld awards exceeding $125,000, *see id.; see also Watson v. E.S. Sutton, Inc.,* 2005 WL 2170659, *16 (S.D.N.Y. Sept.6, 2005) ("The range of acceptable

---

**3.** In what may have been an overabundance of caution, the Court excluded from evidence a videotape showing Walker slashing the tires of another employee who had rejected her romantic overtures. *See* tr., 2/20/07, 368–84. The City itself, however, opened the door to evidence of plaintiff's knowledge of the mis-

conduct, *see* tr., 2/14/07, at 86–87; plaintiff's ex. 3, which further corroborated the reasonableness of his fears engendered by Walker's harassment of him at work. *See also,* tr., 2/20/07, at 364–65, 390–92, 398–400; plaintiff's exhibit 59.

damages for emotional distress in adverse employment action cases lacking extraordinary circumstances seems to be from around $30,000 to $125,000."); *Gatti v. Community Action Agency of Greene County, Inc.,* 263 F.Supp.2d 496, 512 (N.D.N.Y.2003).

In the instant case, however, plaintiff also presented evidence showing that Walker's actions led to the dissolution of his relationship with Sylvia Powell, the mother of his child, and his consequent separation from both. *See* tr., 2/14/07, at 51–52, 66–70, 78; tr., 2/15/07, at 129, 139–44. This, in turn, led to extensive anxiety that, as noted above, directly affected the impact that Walker's misconduct in the workplace had on Singleton. To put it colloquially, Walker's harassment of Singleton, both on and off the job, created a workplace atmosphere in which Singleton felt pervasive fear. This extraordinary hostility warrants damages somewhat above the New York State "norms" described above.

Even then, however, on the facts here presented, there is no way to rationalize an award of $1 million in a manner consistent with New York law. Accordingly, the Court, mindful that it should use the "least intrusive standard" possible to reduce the amount of the jury award, *see Earl v. Bouchard Transp. Co. Inc.,* 917 F.2d 1320, 1330 (2d Cir.1990), finds a remittitur to $300,000 appropriate to take account of the extraordinary emotional injuries suffered by plaintiff while rendering the case within the range of comparable cases. If plaintiff opts not to accept the remittitur, as is his right, the Court will conduct a new trial limited to the question of damages. *See Vasbinder v. Scott,* 976 F.2d 118, 122 (2d Cir.1992).

4. This is without regard to any attorneys' fees and expenses that may be awarded by the Court. In accordance with the Court's nor-

For the foregoing reasons, if the Court does not receive from plaintiff, by no later than August 17, 2007, an acknowledgment in writing, signed by both plaintiff and his counsel, accepting judgment against defendant City of New York in the amount of $300,000,[4] the Court will vacate judgment and empanel a new jury, at a date to be scheduled in consultation with counsel, to determine the appropriate damages award. All other motions are hereby denied.

SO ORDERED.

mal practice, determination of any such award will be made only after the expiration of any appellate practice.