Adel A. AL–KAZAZ, an individual, Plaintiff–Appellant,

v.

UNITHERM FOOD SYSTEMS, INC., Defendant–Appellee.

No. 14–5057.

United States Court of Appeals, Tenth Circuit.

Dec. 8, 2014.

---

Daniel E. Smolen, Donald E. Smolen, II, Smolen Smolen & Roytman, Tulsa, OK, for Plaintiff–Appellant.

Erin K. Dailey, Esq., Gablegotwals, Tulsa, OK, for Defendant–Appellee.

Before HOLMES, BACHARACH, and McHUGH, Circuit Judges.

### ORDER AND JUDGMENT *

CAROLYN B. McHUGH, Circuit Judge.

Adel A. Al–Kazaz, who is of Iraqi descent, worked for Unitherm Food Systems, Inc., as a welder until he was terminated for personal cellphone use during working hours. He brought suit against Unitherm alleging that it maintained a racially hostile work environment in violation of Title VII of the Civil Rights Act of 1964. The district court granted summary judgment for Unitherm. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

Mr. Al–Kazaz began working for Unitherm in December of 2010. During April and May of 2011, on three separate occasions, three different co-workers called him derogatory names. On one occasion, a co-worker, who caused trouble to other co-workers, referred to Mr. Al–Kazaz outside of his presence as a "camel jockey." Mr. Al–Kazaz complained to his supervisor, who said he would take care of the matter. Although the co-worker made no further comments, he was not friendly to Mr. Al–Kazaz. On another occasion, a second co-worker called Mr. Al–Kazaz a "sand nigger." When Mr. Al–Kazaz told the co-worker the comment was offensive, he responded that he did not mean anything by it and did not intend to offend Mr. Al–Kazaz. The second co-worker received written discipline after Mr. Al–Kazaz complained to his supervisor. A third incident occurred when a third co-worker asked Mr. Al–Kazaz, on the day after Osama Bin Laden was killed, whether he was from Afghanistan and was Arab Muslim. After Mr. Al–Kazaz responded that he was from Iraq and not from Afghanistan, the third co-worker stated that "we should go there and kill all these ragheads." Aplt.App. at 169. Although Mr. Al–Kazaz did not know whether the co-worker was referring to Afghanistan, he felt physically threatened and he feared for his safety. He also reported this comment to his supervisor, who said he would take care of it. The third co-worker made no further comments to Mr. Al–Kazaz.

In late June of 2011, Mr. Al–Kazaz was injured at work and was placed on workers compensation leave until December of 2011. No derogatory comments were made to him after his return to work. But after his return, he was disciplined for spilling soapy water on the floor and failing to clean it up as directed and for wasting time at work. He was terminated in February 2012 for using his personal cellphone during work time.

After his termination, Mr. Al–Kazaz filed suit in district court arguing that Unitherm maintained a hostile work environment in violation of Title VII. Unitherm moved for summary judgment, which the court granted. In doing so, the court determined that Mr. Al–Kazaz did not show that the harassment was so severe or pervasive as to create a hostile work environment, since he showed only three isolated instances involving comments by different co-workers. "In addition to the relative

---

* After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

infrequency of the comments," the court decided that "neither the content nor the context of the derogatory statements support[ed] a finding of severe or pervasive harassment." *Id.* at 231. This appeal followed.

"We review de novo the district court's grant of summary judgment...." *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1138 (10th Cir.2008). Summary judgment is proper if there is no genuine issue of material fact and judgment should be entered as a matter of law. *See* Fed.R.Civ.P. 56(a). We "draw all reasonable inferences in favor of" Mr. Al–Kazaz. *Tademy*, 614 F.3d at 1140.

Mr. Al–Kazaz argues that the district court erred in granting summary judgment because a rational jury could conclude that the comments made by his co-workers were sufficiently severe and pervasive as to create a racially hostile work environment at Unitherm. Under Title VII an employer may not discriminate against an employee by allowing "a hostile work environment based on race or national origin discrimination." *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir.2012) (internal quotation marks omitted).

> To survive summary judgment on a claim alleging a racially hostile work environment, the plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and that the victim was targeted for harassment because of ... race or national origin.

*Id.* (brackets and internal quotation marks omitted).

Thus, "whether a hostile environment claim is actionable depends not only on the number of incidents, but also on the sever-ity of the incidents." *Tademy*, 614 F.3d at 1143. In assessing the pervasiveness and severity of the allegedly harassing incidents, "we consider the work atmosphere both objectively and subjectively, looking at all the circumstances from the perspective of a reasonable person in the plaintiff's position." *Id.* at 1144 (internal quotation marks omitted). In other words, a reasonable person must find the environment to be hostile or abusive and the victim must actually perceive it to be so. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). "[T]o determine whether an environment is sufficiently hostile or abusive" to a reasonable person, we consider all circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 787–88, 118 S.Ct. 2275 (internal quotation marks omitted). Offhand comments and non-serious isolated incidents are insufficient, since Title VII is not a "general civility code." *Id.* at 788, 118 S.Ct. 2275 (internal quotation marks omitted). Also, "mere utterance of an ... epithet which engenders offensive feelings in a[n] employee does not sufficiently affect the conditions of employment to implicate Title VII." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citation and internal quotation marks omitted). But "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Id.* (citations and internal quotation marks omitted).

Considering the totality of the evidence viewed in the light most favorable to Mr. Al–Kazaz, we conclude that a jury could not find Unitherm to be permeated with

discriminatory intimidation, ridicule, and insult so severe or pervasive as to alter the conditions of Mr. Al–Kazaz's employment. He was not continually subjected to offensive comments. *Cf. Amirmokri v. Baltimore Gas & Elec. Co.,* 60 F.3d 1126, 1131 (4th Cir.1995) (finding atmosphere was hostile where "co-workers abused [plaintiff] almost daily, calling him names like 'the local terrorist,' a 'camel jockey' and 'the Emir of Waldorf'" and plaintiff was given impossible work tasks and belittled in front of his co-workers); *Boutros v. Canton Reg'l Transit Auth.,* 997 F.2d 198, 204 (6th Cir.1993) (deciding jury question was presented where record showed numerous references to plaintiff's national origin and Arab ancestry, including repeatedly being called a "camel jockey"). Although the three comments made to Mr. Al–Kazaz were improper, they were discrete, isolated, unrelated, and made by different co-workers. As such, they were insufficient to establish the pervasiveness needed for a racially hostile workplace. *See Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1412–13, 1414 (10th Cir.1987). They were not, as he alleges, made so close together as to be continuous. *See Herrera v. Lufkin Indus., Inc.,* 474 F.3d 675, 680 (10th Cir.2007) (stating plaintiff does not show pervasiveness with "sporadic racial slurs"). And none of the isolated incidents, viewed objectively, was so severe that it alone established a hostile work environment. *See Morris v. City of Colo. Springs,* 666 F.3d 654, 666–67 (10th Cir. 2012) (requiring isolated incident to be "especially egregious or extreme"). A reasonable person in Mr. Al–Kazaz's position would not have considered the comment referencing the killing of "ragheads" to be a threat to himself, because it was presented in the context of the killing of Osama bin Laden in another country. Finally, Mr. Al–Kazaz's discipline and termination, occurring several months after the comments, were not linked to a hostile work environment by anything more than Mr. Al–Kazaz's speculation. *See Hernandez,* 684 F.3d at 960 (requiring "[h]ostile work environment harassment [to be] racial or stem from racial animus" (internal quotation marks omitted)).

Thus, Mr. Al–Kazaz has not provided sufficient evidence of objective offensiveness to withstand summary judgment. *See id.* at 958. Accordingly, we conclude that a reasonable jury could not find that the cumulative effect of these three incidents was sufficiently severe to support a hostile work environment claim. Having reached this conclusion, we need not address Mr. Al–Kazaz's argument that Unitherm failed to remedy a hostile work environment.

Accordingly, the judgment of the district court is affirmed.