# United States Court of Appeals
## For the First Circuit

No. 19-1711

CASANDRA HERNÁNDEZ,

Plaintiff, Appellant,

v.

ROBERT MONTAGUE WILKINSON,[*]
Acting Attorney General,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Bruce J. McGiverin, U.S. Magistrate Judge]

Before

Thompson, Boudin, and Kayatta,
Circuit Judges.

Bámily López Ortiz on brief for appellant.
W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant U.S. Attorney, Chief, Appellate Division, Antonio L. Perez-Alonso, Assistant United States Attorney, on brief for appellee.

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting Attorney Robert Montague Wilkinson has been substituted for former Acting Attorney General Jeffrey Rosen.

January 27, 2021

**BOUDIN, Circuit Judge.** In January of 2016, Casandra Hernández, a Drug Enforcement Agency ("DEA") employee since 1999, was promoted to Secretary for the Assistant Special Agent in Charge and began working at the District Office in Ponce, Puerto Rico. That July, Dave E. Joseph was appointed the new Assistant Special Agent in Charge under Matthew G. Donahue, the Special Agent in Charge.

On September 30, 2016, Hernández fractured a bone in her foot and requested several accommodations from Joseph. He approved some of her requests, for example, a more accessible parking spot and a schedule change, but not others, including her application for "advanced sick leave." She also asked for a reassignment so that she could work from her old office, but Donahue denied the request.

On November 22, 2016, Hernández filed a complaint with the Equal Employment Opportunity Office of the DEA ("EEO Office") against Joseph and Donahue, alleging discrimination on the basis of her disability and her nationality as a Puerto Rican.

Part of Hernández's role as secretary was to distribute money that agents could use in their operations. The distribution window was monitored by video cameras, and Hernández complained that she was uncomfortable being watched. Donahue told Hernández that she could install a partition between the part of her office

in view of the cameras and the part of her office that was private, but Hernández never did so.

All was quiet until September 1, 2017, when Special Agent Phillip Jones asked to audit the funds that Hernández had distributed. The two got into a heated argument. Both parties were reprimanded, and Hernández was temporarily assigned to the DEA office in San Juan. Hernández reported the incident to the EEO office.

In mid-October, Donahue revoked Hernández's permit for outside employment, stating that it interfered with Hernández's "availability at work," and proposed that she be suspended for five days. One of the complaints in the proposed suspension reported that:

> you have been directed to adjust your work attire. Your customary office attire is unprofessional and has made both male and female employees feel embarrassed and uncomfortable to be around you. By not wearing professional office attire, employees have been subjected to witnessing your cleavage being entirely exposed almost daily since Nov. 2015. Consequently, this made male employees uncomfortable when conversing with you. You have repeatedly been observed bending over in front of male employees and, due to the inappropriately short length of your dresses/skirts: your actions result in exposing your posterior to them. Your selection of office attire has created an extremely awkward and embarrassing office environment.

The suspension was approved by an outside administrator for reasons that did not include Hernández's work attire. Hernández then filed a new EEO complaint, alleging that she had been subjected to sexual harassment. She asserts that the proposed suspension proved Joseph had been watching her cleavage and posterior both in the office and on videotape and that Joseph sexually harassed her by doing so.

On November 6, 2017, Hernández sued her employer in the United States District Court for the District of Puerto Rico, claiming that she had been discriminated against because of her national origin, disability, and sex and that she had been subjected to illegal retaliation for her EEO activity. The government moved for summary judgment, and in response, Hernández tendered a global cross-reference to her complaint and to her opposition to the government's statements of material fact without further developing her arguments. The district court granted summary judgment to the government on all claims.

Hernández has appealed only the sex discrimination and retaliation claims. This court reviews the district court's summary judgment order de novo, drawing all reasonable inferences in favor of Hernández to determine whether she has put forward competent evidence to show a genuine dispute as to any material fact. Gerald v. Univ. of P.R., 707 F.3d 7, 16 (1st Cir. 2013).

Sex Discrimination. Title VII of the Civil Rights Act of 1964 provides employees with the right to work in an environment free from discrimination "because of such [employee's] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Employees of government agencies have the same guarantee under 42 U.S.C. § 2000e-16(a). To prevail on a hostile work environment claim based on sex discrimination, an employee must show:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001).

Hernández did not provide evidence of severe or pervasive harassment. First, Hernández alleges that Joseph used the video camera in her office to watch her but puts forward no evidence of such behavior.

Hernández also did not put forward competent facts showing that Joseph leered at her. Frequent and/or intense staring

- 6 -

at an employee's body can be the basis for a hostile work environment claim. Billings v. Town of Grafton, 515 F.3d 39, 50-51 (1st Cir. 2008). However, simply looking at a colleague, without evidence that those looks were, inter alia, severe, an unreasonable interference with work, or physically threatening or humiliating does not constitute harassment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

With respect to Jones, Hernández admits that the altercation with Jones was an isolated incident that was purely work related. It thus did not constitute sexual harassment. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

Retaliation. Title VII also protects employees from being discriminated against "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).[1] "In order to establish a prima facie case of retaliation, [an employee] must show that (1) she engaged in protected conduct; (2) she was subjected to an adverse employment action; and (3) the adverse employment action is causally linked to the protected

_____

[1] The parties did not contest whether Title VII's protection against retaliation applies to federal agency employees under 42 U.S.C. § 2000e-16. For purposes of this opinion, we assume without deciding that it applies.

conduct." <u>Rivera-Rivera</u> v. <u>Medina & Medina, Inc.</u>, 898 F.3d 77, 94 (1st Cir. 2018). A report of conduct that allegedly violates Title VII is protected if the employee who reported the conduct had a "good faith, reasonable belief that the underlying challenged actions of the employer violated [Title VII]." <u>Fantini</u> v. <u>Salem State College</u>, 557 F.3d 22, 32 (1st Cir. 2009) (citation and quotations omitted).

Prior to the incidents at issue, Hernández filed a complaint against a different colleague with whom she had a heated argument[2] and was informed that such isolated, work-related disputes do not create a hostile work environment under Title VII. She therefore could not have had a good faith, reasonable belief that a similar fight with Jones constituted a Title VII violation, and thus, reporting it was not a protected activity.

Unlike the allegations with respect to her one-time dispute with Jones, neither party challenges Hernández's good

___

[2] In her prior complaint, Hernández claimed that a fellow employee discriminated against her on the basis of her age after that employee commented on her age and screamed "[n]obody likes you, nobody wants you here, look at you, look at you, and you should get out of here! I hate you, I can't stand you, and I can't even look at you, if nobody dares to tell you, I will, they don't want you here." To the extent that Hernández alleges she was a victim of retaliation because of that complaint, the district court found that Hernández could not have reasonably believed that her report fell within the scope of Title VII protected activity, and on appeal, she devotes only a sentence to challenging that ruling, with no argument or citations. That challenge is therefore waived. <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990).

faith, reasonable beliefs that the remaining allegations in the EEO complaints filed in November 2016 and October 2017 constituted violations of Title VII. The question thus becomes whether Hernández was subjected to a materially adverse employment action because of those reports. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

On appeal, Hernández draws attention to three alleged incidents of retaliation that occurred after Joseph and Donahue found out about her November 2016 complaint. First, she argues that being detailed to San Juan in September 2017 after her altercation with Jones was retaliatory. However, the record contains no evidence to show that her EEO complaint was a but-for cause of that temporary detail. See Ponte v. Steelcase Inc., 741 F.3d 310, 321 (1st Cir. 2014).

Second, Hernández contends that her suspension was in retaliation for her EEO activity. However, the memorandum given to Hernández explaining why Donahue had recommended a suspension provided eight reasons that had nothing to do with her prior complaint, and Hernández has made no attempt to show that those reasons were pretextual. See id. at 323.

Finally, Hernández had permission to sell baked goods outside of the office. She argues that Donahue retaliated against her when he revoked that authorization, but that revocation occurred in October 2017, almost a year after her complaint.

Without putting forth evidence of a causal connection between the complaint and the revocation, her claim of retaliation cannot survive summary judgment.  See id. at 322.

**Affirmed.**