**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 25-13900

Non-Argument Calendar

————————————————

WENDY MIKELL,

*Plaintiff-Appellant,*

*versus*

POSTMASTER GENERAL, U.S. POSTAL SERVICE,

*Defendant-Appellee.*

————————————————

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 5:24-cv-00039-LGW-BWC

————————————————

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and BRANCH,
Circuit Judges.

PER CURIAM:

Wendy Mikell appeals the dismissal of her second amended
complaint for failure to state a claim of hostile work environment

under Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e *et seq*. We affirm.

## I.    BACKGROUND

Mikell was the postmaster of the post office in Alma, Georgia, when Marlon Burton, a fellow post office employee and city carrier, verbally threatened her on April 14, 2022. Mikell reported the incident to her supervisor, Nicholas James, but according to Mikell, James did not immediately respond. According to Mikell, the next day, James told Mikell to place Burton on emergency leave and to have law enforcement present when having Burton removed from the premises for her protection. Burton filed a complaint against Mikell with human resources alleging that she acted on her own accord and embarrassed him by having law enforcement escort him from the premises, and James ordered an initial management inquiry against Mikell for her suspension and removal of Burton. James later stated that Mikell decided to place Burton on emergency leave and call law enforcement on her own.

Several days later, a threat assessment committed found that Burton posed the highest possible threat and directed Mikell to proceed with his removal. The threat assessment committee also told James to suspend the inquiry against Mikell because he had failed to follow proper procedure. James did not suspend the inquiry but threatened Mikell with an EEO action if she did not resolve her dispute with Burton and ordered her to have Burton return to work.

Burton returned to work on May 26, 2022, and the next day threatened Mikell again, this time lunging at her with his fist drawn. Mikell reported the incident to James and, several weeks later, James told Sonya Miley, a manager of post office operations, to place Mikell on emergency leave for "creating a hostile work environment," though the letter informing Mikell of the reason for her suspension was an "altercation with a city carrier." Over a year later, on September 25, 2023, Burton confronted Mikell at a local automated teller machine. On January 25, 2024, and October 16, 2024, Mikell received letters directing her to return to work or be permanently removed.

In March 2025, Mikell filed her second amended complaint against the Postmaster General for being subjected to a hostile work environment based on her race in violation of Title VII. 42 U.S.C. § 2000e-2(a)(1). She alleged that the "continued harassment and pattern of adverse employment actions" against her—i.e., her interactions with Burton and her suspension—was because of her race, and she alleged that she could not return to work because she is white and does not "fit in" with Burton and the other supervisors, who are Black, while Burton has faced no repercussions and has been allowed to continue working.

Mikell attached exhibits to her second amended complaint, including an EEO complaint, which she filed in February 2024, and in which she alleged discrimination because of her race—namely, Burton's threatening actions that resulted in his suspension in April 2022, James's initial management inquiry against her in April 2022,

Burton's reinstatement in May 2022, Burton's threat against her in May 2022, her suspension in June 2022, the confrontation with Burton at the teller machine in September 2023, and the January 2024 letter directing her to return to work and warning her of the consequences of her failure to do so. She also attached the March 2024 dismissal of her EEO complaint and notice of her right to sue.

The district court granted the Postmaster General's motion to dismiss Mikell's second amended complaint for failure to state a claim for relief. It stated that Mikell had filed two EEO complaints, the first in October 2022, which was dismissed in February 2023. It found that the claims Mikell raised in her first EEO complaint—Burton's April 2022 threat, James's failure to immediately respond to Mikell's report of the threat, Mikell being asked to appear before the threat assessment committee in April 2022, James's order to reinstate Burton in May 2022, Burton's May 2022 threat, and Mikell's suspension in June 2022—were untimely because she did not file suit within 90 days of the dismissal of her complaint. And it found that allowing Mikell to circumvent 90-day filing deadline by filing a second EEO complaint about the same claims "would defeat the purpose" of that deadline. Because Mikell failed to file suit after she received her first right-to-sue notice, she was barred from asserting any claims based on the allegations in the first EEO complaint. Next, the district court found that the untimely 2022 acts raised in Mikell's second EEO complaint were not sufficiently related to the timely acts—the 2023 teller machine incident and the 2024 letters—to support a claim for a hostile work environment.

The district court ruled that the timely acts alleged in Mikell's second amended complaint failed to state a claim of a hostile work environment. The 2023 confrontation at the teller machine occurred once, outside of work, did not involve an on-duty postal service employee, and lacked plausible facts to allow a reasonable inference of racial discrimination. The 2024 letters were not adverse or based on a protected characteristic, and they were not severe or pervasive.

## II.    STANDARD OF REVIEW

We review a dismissal for failure to state a claim *de novo*. *Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1277 (11th Cir. 2025). We accept the allegations in the complaint as true and construe them in the light most favorable to Mikell. *Id.*

## III.    DISCUSSION

We divide our discussion into two parts. First, we explain that the untimely acts alleged in Mikell's second EEO complaint were not sufficiently related to the timely acts to state a claim for hostile work environment. Second, we explain that the timely acts failed to state a claim for hostile work environment.

*A. The Untimely Acts Raised in Mikell's Second EEO Complaint Were Not Sufficiently Related to the Timely Acts to be Fairly Considered Part of the Same Claim.*

Mikell concedes that the allegations from her first EEO complaint were untimely but argues that her second EEO complaint revived the allegations because they were part of a pattern and

practice of discrimination in the creation of a hostile work environment dating back to April 2022, when Burton first threatened her. She argues that she filed her civil action within the time requirements of the most recent adverse employment actions in 2024, and that her claims are not untimely because they are all part of the same hostile work environment claim. Title VII prohibits employers from discriminating against an employee based on race or sex. *See* 42 U.S.C. § 2000e-2(a)(1). This prohibition includes requiring people to work in a discriminatorily hostile or abusive environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

Before filing a complaint under Title VII in federal court, a federal employee must first exhaust her administrative remedies. *Hogan v. Sec'y, U.S. Dep't of Veterans Aff.*, 121 F.4th 172, 173-74 (11th Cir. 2024). To do so, the employee must contact the agency's EEO counselor within 45 days of the alleged discriminatory act and file an administrative complaint within 15 days of the counselor informing her of her right to do so. *Id.* After the agency issues its final decision, the employee must file her civil action within 90 days. *Id.*; 42 U.S.C. § 2000e-16(c).

We agree with the district court that the 2022 acts alleged in both Mikell's first and second EEO complaints are the same, and Mikell failed to file her complaint in the district court within 90 days of receipt of her right-to-sue letter for her first EEO complaint. So the 2022 acts are untimely. *See Hogan*, 121 F.4th at 173-74; 42 U.S.C. § 2000e-16(c).

We also agree that the timely acts—the 2023 confrontation at the teller machine and the 2024 letters—are not sufficiently related to the untimely 2022 acts to support a claim for relief. "A hostile work environment claim is comprised of a series of separate acts that collectively constitute one unlawful employment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). In *Chambless v. Louisiana-Pacific Corporation*, we held that, to determine whether untimely discrete acts can form the basis for a hostile work environment claim, the "pivotal question" is whether they are "sufficiently related" to a timely claim to "be fairly considered part of the same claim." 481 F.3d 1345, 1350 (11th Cir. 2007). Acts are sufficiently related to other acts where they are "the same type of 'discriminatory intimidation, ridicule, and insult' that characterized" the other acts. *Id.* (quoting *Harris*, 510 U.S. at 21). The 2023 and 2024 acts cannot be "fairly considered" part of the 2022 acts, *see Chambless*, 481 F.3d at 1350, because they are not "part of the same [alleged] hostile work environment practice," *see Morgan*, 536 U.S. at 117, 120. The 2023 confrontation involved Burton but is otherwise wholly unrelated to the earlier alleged acts, occurred outside of work, and occurred while both Mikell and Burton were off duty over a year later. *See Chambless*, 481 F.3d at 1350. The 2024 letters, actually directing her to return to work and advising her of the consequences of not doing so, were sent two years after the earlier alleged acts and were sent by postal service managers other than James. *See id.*

*B. The Timely Acts Raised in Mikell's Second Amended Complaint Did Not State an Actionable Claim.*

Mikell argues that she stated a claim of hostile work environment because she is a member of a protected class, she faced unwelcome harassment due to the suspensions, threats from Burton, and threatened removal, the harassment was based on her race, the harassment was pervasive because it started in April 2022 and continued into 2024, and her employer was liable. She also argues that the 2024 letters alone support a claim of hostile work environment because they constitute threats for her to either return to a hostile work environment or be removed.

"When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris*, 510 U.S. at 21 (internal citations omitted). We have held that an employee can prove a claim for a hostile work environment based on race under section 2000e-2(a)(1) if she is a member of a protected class who was subjected to unwelcome racial harassment based on her race, the harassment was severe or pervasive enough to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and the employer is responsible for the harassment. *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248-49 (11th Cir. 2014).

The "severe or pervasive" requirement includes both an objective and subjective component. An employee must prove that a

reasonable person in her position would have found the work environment hostile or abusive and that she subjectively perceived the work environment as hostile or abusive. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). When evaluating the objective severity of the harassment, we consider "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.*

The alleged 2023 and 2024 acts fail to support a claim of a hostile work environment. Mikell has not established that the 2023 confrontation at the teller machine was because of her race or that the 2024 letters were sent because of her race. *Adams*, 754 F.3d at 1248-49. She has also not established that the confrontation or her receipt of the letters months later, and themselves months apart, amounted to frequent conduct, or that these acts were severe, physically threatening, or humiliating. *Miller*, 277 F.3d at 1276.

## IV.    CONCLUSION

We **AFFIRM** the dismissal of Mikell's second amended complaint.